IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MATHEW ISHAM and ROXANNE BEST ISHAM, ) | CV. NO. 06-00382 DAE-BMK |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| PADI WORLDWIDE ) | |
| CORPORATION, a California ) | |
| Corporation, INTERNATIONAL ) | |
| PADI, INC., aka PROFESSIONAL ) | |
| ASSOCIATION OF DIVING ) | |
| INSTRUCTORS, a California ) | |
| Corporation, DIVING SCIENCE ) | |
| AND TECHNOLOGY CORP., aka ) | |
| DSAT, a California Corporation, and ) | |
| CAPITAL INVESTMENTS & ) | |
| VENTURES CORPORATION, ) | |
| a.k.a. CIVCO, a California ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |
| ) | |
| DENNIS CLAYPOOL, SHERYLL ) | CV. NO. 06-00386 DAE-BMK |
| CLAYPOOL, SCOTT CLAYPOOL, ) | |
| and KRISTIN CLAYPOOL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |

PADI WORLDWIDE                      )
CORPORATION, a California           )
Corporation, INTERNATIONAL          )
PADI, INC., aka PROFESSIONAL        )
ASSOCIATION OF DIVING               )
INSTRUCTORS, a California           )
Corporation, DIVING SCIENCE         )
AND TECHNOLOGY CORP., aka           )
DSAT, a California Corporation,      )
                                    )
        Defendants.                 )
_____ )


ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS CLAYPOOL PLAINTIFFS' COMPLAINT OR, IN THE
ALTERNATIVE, JUDGMENT ON THE PLEADINGS; GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ISHAM
PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
JUDGMENT ON THE PLEADINGS; AND DENYING CLAYPOOL
<u>PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants Padi Worldwide

Corporation ("Padi Worldwide"), International Padi, Inc., a.k.a. Professional

Association of Diving Instructors ("International Padi"), Diving Science and

Technology Corp., aka DSAT, and Capital Investments & Ventures Corporation,

a.k.a. CIVCO's (collectively, "Defendants") Motion to Dismiss Plaintiffs Dennis

Claypool, Sheryll Claypool, Scott Claypool, and Kristin Claypool's (collectively,

"Claypool Plaintiffs") Complaint for Personal Injury Damages and Loss of

2

Consortium, Filed July 14, 2006, or In the Alternative for Judgment on the

Pleadings ("Motion to Dismiss Claypool Plaintiffs' Complaint") and Defendants'

Motion to Dismiss Plaintiffs Matthew Isham and Roxanne Best Isham's

(collectively, "Isham Plaintiffs")[1] First Amended Complaint for Damages, Filed

June 1, 2007, Or In the Alternative For Judgment on the Pleadings ("Motion to

Dismiss Isham Plaintiffs' First Amended Complaint") and the supporting and

opposing memoranda, the Court GRANTS judgment on the pleadings in favor of

Defendants on Claypool and Isham Plaintiffs' strict liability claims (First Causes of

Action for both); Claypool Plaintiffs' Negligent Manufacture (Second Cause of

Action) and Isham Plaintiffs' Negligence (Sixth Cause of Action) claims; Isham

Plaintiffs' Negligent Misrepresentation claim (also labeled as a Sixth Cause of

Action); Claypool and Isham Plaintiffs' Breach of Warranty claims (Third and

Second Causes of Action respectively), including Isham Plaintiffs' Breach of

Express and Implied Warranties (Third Cause of Action); Isham and Claypool

Plaintiffs' emotional distress claims (Ninth and Sixth Causes of Action

---

[1]      Unless the Court refers to "Isham Plaintiffs" or "Claypool Plaintiffs" specifically, the Court's reference to "Plaintiffs" includes both sets of Plaintiffs, Claypool and Isham Plaintiffs.  The Court, at times, shall refer to the respective Plaintiffs individually by their first name or by their first and last name per the spelling provided in the caption, which the parties, at times, change in their motions.

3

respectively), and Isham Plaintiffs' Unfair and Deceptive Trade Practices claim (Fifth Cause of Action).

The Court DENIES judgment on the pleadings in favor of Claypool and Isham Plaintiffs' Fraudulent Concealment claims (Claypool Plaintiffs' Fifth Cause of Action; Isham Plaintiffs' Fourth Cause of Action), Claypool and Isham Plaintiffs' Gross Negligence and Willful and Wanton Indifference punitive damages claims (Claypool Plaintiffs' Fourth Cause of Action and Isham Plaintiffs' Seventh Cause of Action), and Plaintiffs Sheryll Claypool and Roxanne Isham's loss of consortium claims (Claypool Plaintiffs' Seventh Cause of Action; Isham Plaintiffs' Tenth Cause of Action).

The Court DENIES Claypool Plaintiffs' request to amend their Complaint should the Court find merit to Defendants' arguments.

BACKGROUND

Because the instant, consolidated lawsuits arose from the same factual allegations related to a single diving incident, the Court shall address both motions in this Order.  On July 13, 2006, Isham Plaintiffs filed a Complaint for Personal Injury Damages and Loss of Consortium with a jury demand, which they amended on June 1, 2007 to add additional claims.  On July 14, 2006, Claypool Plaintiffs filed a Complaint for Personal Injury Damages and Loss of Consortium with a jury

4

demand.  Based on information contained in the complaints, on or about July 20, 2004, as visitors to the State of Hawaii, Claypool Plaintiffs traveled to the island of Kauai where they went scuba diving and/or snorkeling at or near Makol'e Reef off of the Napali Coast aboard the Port Allen based dive boat, "Blue Dolphin."[2]  After qualifying for a dive program known as Discover Scuba Diving Program ("Diving Program"), Claypool Plaintiffs Dennis and Scott participated in the Diving Program with the supervision of a PADI-certified diving instructor, Plaintiff Matthew Isham ("Isham").  The Diving Program includes a PADI "Discover Scuba Diving Instructor Guide" ("PADI Product No. 79181") and a "Discovery Scuba Diving" participant's pamphlet ("PADI Product No. 60109"), among other "various written training materials and bulletins."   The Diving Program is designed to "introduce[s] people to scuba diving in a highly supervised and relaxed manner."  "Under the guidance of a PADI professional," the Diving Program

_____

[2]      Claypool Plaintiffs are residents and citizens of the State of Arizona. Isham Plaintiffs are residents and citizens of the State of Texas.  At all times relevant to this action, Isham Plaintiffs were residing as husband and wife in the County of Kauai, State of Hawaii.  Defendants are corporations organized and existing in the State of California with the principal place of business in California. Defendants Padi Worldwide, International Padi, and DSAT are authorized to do business in the State of Hawaii.  CIVCO is believed to be the parent corporation of Padi Worldwide, International Padi, and DSAT.

teaches new divers about "basic safety concepts" and how to "put on equipment and swim around underwater in a closely supervised environment."

That afternoon, once anchored at Makol'e Reef, Claypool Plaintiffs Sheryll and Kristin snorkeled in the waters inshore of the Blue Dolphin's mooring site. Around the same time, Isham took the other Claypool Plaintiffs, Dennis and Scott, and two other student divers in the waters offshore of the mooring site. That was the first time that Dennis had been scuba diving, including wearing scuba equipment and breathing underwater with an artificial breathing apparatus. Shortly after entering the water, Dennis experienced buoyancy problems, causing him to drift toward the surface of the water and to become separated from the rest of the class. While Dennis was experiencing those problems, Isham took the other three students through an underwater lava tube near the bottom of the water.

Isham did not spot Dennis until he had risen to the surface of the water in a busy navigation channel. Before Isham could reach Dennis to assist him, a tourist catamaran, known as the "M/V Spirit of Kauai," passed through the dive site at a speed of approximately 12 knots, striking and injuring Isham and Dennis. Based on allegations in Claypool Plaintiffs' Complaint, the starboard hull and propeller of the catamaran slashed Dennis's right forearm to the bone, shattered and displaced his right radius and ulna, and transected all of the nerves,

6

veins, muscles and tendons serving his right hand and fingers.  Based on

allegations in Isham Plaintiffs' Complaint, Isham suffered severe injuries to his left

leg, causing his left leg to be amputated above the knee.  Isham allegedly is unable

to serve as an open water dive instructor anymore.

Before Isham Plaintiffs (CV No. 06-382) and Claypool Plaintiffs' (CV

No.  06-286) cases were consolidated, Defendants had filed separate motions to

dismiss against Isham and Claypool Plaintiffs on December 29, 2006.  Following

the assignment of the consolidated actions on January 3, 2007, on April 4, 2007,

Isham Plaintiffs filed a motion for leave to amend their complaint.  Isham and

Claypool Plaintiffs filed oppositions on April 11, 2007, to which Defendants

replied on April 19, 2007.  In light of Isham Plaintiffs' motion for leave, on April

23, 2007, the Court issued an Order directing Defendants to withdraw their motion

to dismiss Isham Plaintiffs' Complaint.  The following day, Defendants withdrew

both of their motions, without prejudice, against Isham and Claypool Plaintiffs.

After Isham Plaintiffs filed their First Amended Complaint, on June 8,

2007, Defendants filed the instant Motions against Isham and Claypool Plaintiffs.

On August 1, 2007, Claypool Plaintiffs filed their opposition, and, on August 2,

2007, Isham Plaintiffs filed their opposition.  On August 9, 2007, Defendants filed a reply to each motion.[3]

## STANDARD OF REVIEW

A motion to dismiss, if made before a responsive pleading, will be granted where the plaintiff fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).  Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court is not required to accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. See Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

---

[3]    As further background, a settlement occurred in a consolidated case involving Isham and Claypool Plaintiffs that previously had been before this Court, Mathew Isham, et al. v. Blue Dolphin Charters, Ltd., et al., CV No. 04-559 HG BMK and Dennis Claypool v. Captain Andy's Sailing, Inc., Blue Dolphin Charters, Ltd., and Blue Dolphin Diving, Ltd., CV No. 04-570 HG BMK.

If a motion to dismiss is made after a responsive pleading, it shall be treated as a motion for judgment on the pleadings.  See Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954-55 (9th Cir. 2004).  Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides in pertinent part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(h)(2) specifically authorizes a moving party to use a motion for judgment on the pleadings to raise the defense of failure to state a claim.  See Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980).  The standard for a Fed. R. Civ. P. 12(b)(6) motion is the same as that for a 12(c) motion.  See Abbatiello v. County of Kauai, Civ. No. 04-00562, 2007 WL 473680 (D. Haw. February 7, 2007).  Thus, as with a motion to dismiss, the Court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  See Cholla Ready Mix, Inc., 382 F.3d at 973.

"For purposes of the motion [for judgment on the pleadings], the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).  Judgment on the pleadings is proper when, taking all of the allegations in the

non-moving party's pleadings as true, the moving party clearly establishes that there are no material issues of fact and the moving party is entitled to judgment as a matter of law.   See Torbet v. United Airlines, Inc., 298 F.3d 1087, 1089 (9th Cir. 2002); see also Hal Roach Studios, Inc., 896 F.2d at 1550.  In other words, the moving party must prove that it is "clearly entitled to prevail."  Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984) (citation omitted).

For both a motion to dismiss and a motion for judgment on the pleadings, the Court's review is limited to the pleadings.  See Hal Roach Studios, Inc., 896 F.2d at 1550.  If the Court relies on matters presented outside of the pleadings, such as a declaration or other outside statements and/or documents, it shall treat the motion as one for summary judgment.  See id.; Anderson v. Anemone, 86 F.3d 932, 934 (9th Cir. 1996); see also Fed. R. Civ. P. 12(b) & 12(c). If the Court does not consider such matters, the motion properly can be treated as one for dismissal.  See Keas v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997).

## DISCUSSION

The majority of Defendants' arguments rest on the notion that Claypool and Isham Plaintiffs' claims must be dismissed because the Diving Program is not a "product."  Thus, Defendants contend, Claypool and Isham

Plaintiffs cannot maintain their (1) Strict Products Liability claims (Claypool and Isham Plaintiffs' First Cause of Action), (2) Negligent Manufacture claim (Claypool Plaintiffs' Second Cause of Action) and Negligent Misrepresentation claim (Isham Plaintiffs' Sixth Cause of Action), (3) Breach of Warranty claims (Claypool Plaintiffs' Third Cause of Action and Isham Plaintiffs' Second and Third Causes of Action), and (4) Fraudulent Concealment/Failure to Warn claims (Claypool Plaintiffs' Fifth Cause of Action and Isham Plaintiffs' Fourth Cause of Action).

Defendants also argue that Claypool and Isham Plaintiffs cannot sustain their Gross Negligence and Willful and Wanton Indifference claims (Claypool Plaintiffs' Fourth Cause of Action and Isham Plaintiffs' Seventh Cause of Action) because they amount to nothing more than claims for punitive damages. Additionally, Defendants assert that Claypool Plaintiffs Sheryll, Scott, and Kristin's Emotional Distress (Sixth Cause of Action) and Sheryll's Loss of Consortium (Seventh Cause of Action) claims fail because they are derivative of Plaintiff Dennis's products liability claims.  Likewise, Defendants argue for dismissal of Isham Plaintiffs' Emotional Distress claim (Ninth Cause of Action) because (1) Roxanne does not state a valid claim and (2) Defendants are not responsible for Mathew's injuries.  Finally, Defendants seek dismissal of

11

Roxanne's Loss of Consortium claim (Tenth Cause of Action) because it is derivative of Mathew's products liability claims.

Regarding Isham Plaintiffs' two remaining claims, Defendants contend that Isham Plaintiffs' Negligence claim (which, in addition to their Negligent Misrepresentation claim, also listed as a Sixth Cause of Action) must be dismissed because it does not relate back to the original complaint and, thus, it is barred by the statute of limitations.  Defendants further argue that Isham Plaintiffs' Unfair and Deceptive Trade Practices claim (Fifth Cause of Action) is not a cognizable claim because the claimed loss is personal injury.

Claypool Plaintiffs respond that Defendants' motion to dismiss should not be considered because it was filed after the answer, making it untimely, and, even if the Court were to construe Defendants' motion as one for judgment on the pleadings, the Court must accept all of Plaintiffs allegations as true and disregard any documents that were not incorporated in the Complaint.  Claypool Plaintiffs further assert that the issue of whether the Diving Program is a product creates material issues of fact that cannot be determined at this stage.  Moreover, even if the Court were to determine that the Diving Program is not a product, Plaintiffs assert that their remaining causes of action still would be actionable.  Finally,

Claypool Plaintiffs argue that, even if the Court were to find merit to Defendants' claims, Plaintiffs should be granted leave to amend their Complaint.

Isham Plaintiffs similarly argue that the Diving Program constitutes a "product in a defective condition unreasonably dangerous to the user." Isham Plaintiffs do not address Defendants' remaining arguments.

I. <u>Claypool Plaintiffs' Procedural Arguments</u>

Although Claypool Plaintiffs are correct that a motion to dismiss must be made before a further pleading, such as an answer, the Court may treat an untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings pursuant to Rule 12(c), which the Court elects to do here. <u>See</u> <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 954-55 (9th Cir. 2004). As set forth above, Claypool Plaintiffs correctly state the standard of review. Still, when accepting Claypool Plaintiffs' allegations as true, the Court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. <u>See</u> <u>Cholla Ready Mix, Inc.</u>, 382 F.3d at 973.

Furthermore, as already set forth, the Court may not consider documents outside of the pleadings, lest it convert the motion for judgment on the pleadings into a motion for summary judgment. <u>See</u> <u>Hal Roach Studios, Inc.</u>, 896 F.2d at 1550. Defendants attach three exhibits to both of their motions to dismiss:

(1) Exhibit A "Discover Scuba Diving Instructor Guide" ("PADI Product No. 79181"), (2) Exhibit B, "Discovery Scuba Diving" participant's pamphlet ("PADI Product No. 60109"), and (3) Exhibit C, PADI Discovery Scuba Diving Certificate Statement.  Claypool Plaintiffs claim that they have no objection to Defendants' Exhibits A and B because Claypool Plaintiffs specifically reference them in paragraph 15 of their Complaint, yet they apparently seek to exclude those documents from review.  Claypool Plaintiffs also seek to exclude review of Defendants' Exhibit C, which may or may not be included within the reference to "various written training materials and bulletins" in paragraph 15.

"A court may [] consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  Id.  Here, Claypool Plaintiffs specifically reference in their Complaint the documents contained in Defendants' Exhibits A and B; thus, the Court properly may consider those documents as part of the Complaint.  As for Exhibit C, because Claypool Plaintiffs' reference to "various

14

written training materials and bulletins" under paragraph 15 does not clearly

identify the document contained in Exhibit C (and Defendants do not argue for that

inclusion, as they did for Exhibits A and B), the Court shall not consider

Defendants' Exhibit C for the purpose of this motion.

　　　II.　Substantive Arguments

　　　　　　A.　Diving Program as a "Product" or "Good" for
　　　　　　Claypool and Isham Plaintiffs' Strict Products Liability,
　　　　　　Negligent Manufacture and Negligence/Negligent
　　　　　　Misrepresentation, Breach of Warranty, and/or
　　　　　　Fraudulent Concealment/Failure to Warn claims

　　　　　　　1.　Strict Products Liability

　　　　　There is no dispute that admiralty law governs the instant lawsuit.

See, e.g., In the Matter of Pacific Adventures, Inc., et al., 5 F. Supp. 2d 874, 877

(D. Haw. 1998) (involving a scuba diving incident by dive boat); McClenahan v.

Paradise Cruises, Ltd., 888 F. Supp. 120, 121-23 (D. Haw. 1995) (involving a

"snuba" diving incident, which is more akin to snorkeling).  "Absent a relevant

statute, the general maritime law, as developed by the judiciary, applies," which is

"an amalgam of traditional common-law rules, modifications of those rules, and

newly created rules" drawn from state and federal sources.  See East River

Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986).

The Supreme Court and the Ninth Circuit both have recognized that "[g]eneral maritime law incorporates strict liability and negligence principles of products liability." Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988); East River Steamship Corp. 476 U.S. at 865. Although the Supreme Court has not determined what substantive rules should apply in maritime products liability cases, the Ninth Circuit has adopted the Restatement (Second) of Torts § 402A as the law controlling strict products liability claims in admiralty law.[4] See Matthews, 854 F.2d at 1168. Because Restatement (Second) of Torts § 402A since has been superceded by Restatement (Third) of Torts, the Court shall rely on the Restatement (Third) of Torts where applicable.[5]

---

[4]    Even if the Court were to rely exclusively or predominantly on Hawaii state law, the same or similar principles of law would apply as Hawaii "essentially" adopted the rules contained in § 402A. See Stewart v. Budget Rent-A-Car Corp., 470 P.2d 240, 243 (1970) (involving a steering defect in a rental car); see also East River Steamship Corp., 476 U.S. at 865 n.2 (determining that state law principles were not required in this admiralty case, and that, in any event, reliance on state law principles would have led to the same result).

[5]    Claypool Plaintiffs contest the adoption or approval of the Restatement (Third) of Torts, claiming that the Ninth Circuit adopted the Restatement (Second) of Torts only. Notwithstanding, as discussed infra, both the Second and the Third Restatement share similarities in the liability imposed (either strict or negligence), depending on the type of defect at issue, and both require that the defect pertain to a "product." The definition of a product under Restatement (Third) of Torts § 19, furthermore, is consistent with prevailing case law on the matter, which the Court deems persuasive. Although the Court shall construe the

(continued...)

16

Generally, "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."  Restatement (Third) of Torts § 1 (emphasis added).  Restatement (Third) of Torts § 19 defines a "product" as: "(a) . . . tangible personal property distributed commercially for use or consumption. . . . (b) Services, even when provided commercially, are not products. . . ."  (emphasis added).  The Court must determine whether something is a product as a matter of law.  See Restatement (Third) of Torts § 19, Comment(a).

Restatement (Third) of Torts § 2 imposes strict liability for defectively manufactured products when the products contain a manufacturing defect, that is, "when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product."  See Restatement (Third) of Torts § 2(a) and Comment(a) (emphasis added).  In other words, a manufacturer or maker of a product will be strictly liable if the product that they

_____

[5](...continued)
term "product" on a case-specific basis, see Leong v. Sears Roebuck and Co., 970 P.2d 972, 973 (Haw. 1998), it shall rely on the Restatement (Third) of Torts for guidance, as the Supreme Court likewise has done in an admiralty case.  See Saratoga Fishing Company v. J.M. Martinac & Co., 520 U.S. 875, 879 (1997) (relying on Restatement (Third) of Torts: Products Liability § 6 for the principle "that tort law in this area ordinarily (but with exceptions) does not permit recovery for purely economic losses, say, lost profits").

sell contains a defect.  The problem is not with the design of or the

instruction/warning attached to the product, but with the manufacturing or

construction of the product itself.  The theory of strict liability comports with the

Restatement (Second) of Torts § 402A, which theory the Ninth Circuit has

accepted.  See Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co., 565 F.2d

1129, 1135 (9th Cir. 1977).

For Claypool and Isham Plaintiffs' Strict Liability claims to survive,

their factual allegations therefore must support the existence of a defect(s) in a

"product," which Plaintiffs contend is the Diving Program.  Specifically, Plaintiffs

claim that the Diving Program contained numerous defects that departed from the

actual, intended design of the program.  Thus, the Court first must determine

whether the Diving Program is a "product" for the purpose of strict products

liability.  The Court concludes that it is not.

To start, the leading policy arguments underlying strict products

liability have been articulated to include consumer expectation arguments,

deterrence and risk-spreading arguments, and liability rationales, among others.

The Hawaii Supreme Court has articulated the "leading arguments" as follows:

18

> The leading arguments for the adoption of a rule of strict products liability have been that the public interest in human life and safety requires the maximum possible protection that the law can muster against dangerous defects in products; that by placing the goods on the market the maker and those in the chain of distribution represent to the public that the products are suitable and safe for use; and that the burden of accidental injuries caused by defective chattels should be placed upon those in the chain of distribution as a cost of doing business and as an incentive to guard against such defects.

Stewart, 470 P.2d at 243.  In essence, one argument is that a maker's (historically, being a manufacturer's) representation to the public that products are suitable for safe use, i.e., that they are not defective, urges consumers to trust their products, thus alleviating the need for the consumers to evaluate the products before purchase.  The fault, therefore, lies on the maker's shoulders for, what amounts to, breaching the consumer's trust in the product.  Creating liability where liability is due also promotes accident prevention, deterring makers from allowing defective products to enter the marketplace.  See Winter v. G.P. Putnam's Sons, 938 F.2d 1033, 1035 (9th Cir. 1991).  Additionally, the benefits associated with spreading the risks among consumers through higher prices, which indirectly provides accident insurance from harm for product defects, is generally believed to benefit consumers and makers.  See, e.g., id. at 1035; Leong, 970 P.2d at 974.

Nonetheless, there are limits to the theory of strict products liability when the costs in applying it outweigh the benefits associated with promoting deterrence, risk-spreading, and consumer expectations.  See Winter, 938 F.2d at 1035.  Generally, the purpose of strict products liability is to protect consumers against "tangible" items that enter the marketplace with a defect.  See id. at 1034. Some courts have recognized intangibles such as power and electricity as "consumable products" for the  purpose of strict liability, see e.g., Ransome v. Wisconsin Elec. Power Co., 275 N.W.2d 641, 648 (Wis. 1979), though those exceptions are few and inapplicable here.  Typically, intangible property such as information contained in books, travel guides, and other instructional and training literature and services (not the tangible medium, but the information) are not considered "products."  See Restatement (Third) of Torts § 1, Comment(d).  For example, "expressions of ideas" contained in "how to" books and travel guides generally are treated as services, not tangible products, to encourage the "unfettered exchange of ideas."  See Winter, 938 F.2d at 1035 (finding that information contained in an Encyclopedia of Mushrooms was not a product like a highly technical aeronautical chart, but rather was more akin to a "how to use" book detailing thoughts and an expression in a book); Birmingham v. Fodor's Travel Publ'n, Inc., 833 P.2d 70, 78-79 (Haw. 1992) (determining that information

20

contained in a travel guide was not a product "focused on the tangible world," but rather constituted expressions of ideas).  Additionally, courts have considered tours and training programs, such as raft tours and "taser-gun" training, services rather than products.  See Ferrari v. Grand Canyon Dories, 38 Cal. Rptr. 2d 65, 70-72 (1995) (determining that the defendants provided a "service, i.e., recreational raft transportation on the Colorado River," rather than a product, providing "all the materials for the trip, instructions on rafting safety, and guides to perform the labor and conduct the activities" and that use of the raft was merely incident to the service); Torres v. City of Madeira, Nos. CIVFF 02-6385, CV F 03-5999, 2005 WL 1683736, at *13 (E.D. Cal. 2005) (granting summary judgment on taser-gun training because "'[t]raining' is a service and is not subject to strict products liability theories").

One prominent exception is for false information contained in maps and navigational charts because of their highly technical nature and accuracy as guiding tools similar to classic products such as compasses.  For instance, the Ninth Circuit has determined that highly technical aeronautical charts are products when such charts graphically depict an "instrument approach procedure" for a particular airport, including "directional heading, distances, minimum altitudes, turns, radio frequencies and procedures to be followed if the approach is missed."

21

Brocklesby v. United States, 767 F.2d 1288, 1295 (9th Cir. 1985).  The Ninth

Circuit, focusing on the "distinct" nature of such charts, distinguished the

aeronautical charts from other general publications such as trade journals,

reasoning that had a pilot relied on the republication of the instrument approach in

a trade journal, the journal would have been immune from strict liability.  See id. at

1297-98.  Instead, because the publisher "convert[ed] a government procedure

from text into graphic form and represent[ed] that the chart contain[ed] all

necessary information," the aeronautical chart constituted a product.  Id. at 1298.

Plaintiffs attempt to draw comparisons between the Diving Guide and

the intangibles that courts have found to be products to argue that the law is not

clear in that regard, thus each case must be considered on a case-by-case basis.

The Court does not dispute that; as such, it reviews this case on the particular facts

presented.  The instant Diving Program is a training program that includes

instructions and lessons.  Isham Plaintiffs argue that the instructions, lessons, and

training in the Diving Program are more functional and accurate than literary, thus

distinguishing this case from the "books," "travel guide," training and other

"services" cases.  Claypool Plaintiffs contend that the "mass-produced set of

palpable" procedures and guidelines are mandatory and amount to standards more

akin to published aeronautical procedures.  In short, rather than an expression of

22

ideas, both set of Plaintiffs believe that the Diving Program constitutes a strict manual to be followed closely, containing all information necessary to succeed in the Diving Program.

Despite Plaintiffs apparent attempts to analogize the standards in the Diving Program to those required for technical aeronautical charts, the same level of specificity and technicality that is apparent in the charts simply is not present in the Diving Program.  The Diving Program emphasizes the relaxed nature of the program and the guidance and supervision that participants will receive.  Certainly, the Diving Program includes standards, such as a required age, location, maximum depth, instructors' qualifications, and requirements pertaining to supervision, equipment, and materials to read.  Those standards are not, however, as rigorous, technical, or detailed as the standards required in the aeronautical charts' cases. Rather, the standards are more analogous to the cases involving training and informational material for services, such as raft trips, which include safety instructions and guides to perform the labor and to conduct the activities and the training at issue.  See Ferrari, 38 Cal. Rptr. 2d at 66-67; Torres, 2005 WL 1683736, at *1-2, 21.

The Diving Program may provide more specific information (though not necessarily more technical) than, for instance, that contained in a travel guide,

23

Birmingham, 833 P.2d at 73, or a reference manual, Winter, 938 F.2d at 1034, as it

provides a discrete guide to a specific activity rather than general information on a

given topic or subject area.  Nevertheless, the information contained in the Diving

Program does not require the same level of "complete accuracy" of such material

as topographical or geographical features as would an aeronautical chart.  See, e.g.,

Fluor Corp. v. Jeppeson & Co., 170 Cal. App. 3d 468, 476, 216 Cal. Rptr. 68

(1985).  Technical accuracy, of course, may (and should) be a desired goal of the

program.  Still, the failure to achieve that goal typically will not produce the same

degree of devastation as would the failure to include, for instance, a hill in an

aeronautical chart.  See id. at 473.

　　　　　The Court's determination that the Diving Program does not

constitute a product coincides with the purpose of and the policies underlying the

strict products liability doctrine.  "Unlike mass produced goods, services are not

marketed to a wide variety of the general public.  Thus, parties injured by poor

services are in a better position to locate the tortfeasor and identify the defect

caused by the tortfeasor's negligence."  Snyder v. ISC Alloys, Inc., 772 F. Supp.

244, 251 (W.D. Pa. 1991) (finding no strict liability for technical drawings,

services, and information concerning zinc dust plants).  Here, the tortfeasor and the

"defects," if they exist, in the Diving Program are easily identifiable.  The Diving

Program is not, like mass produced goods, marketed to the general public at large, but rather it is marketed to a discrete set of consumers interested in scuba diving or snorkeling off of the shores of Kauai.  Plaintiffs, therefore, should have had less difficulty identifying those at fault, if anyone, and Plaintiffs apparently did identify those allegedly at fault, as evidenced by the prior settlement.

A consideration of the history of strict liability in the context of mass-manufacturing and risk-bearing, liability rationales, as well as the prevailing case law, supports the Court's determination that the Diving Program is not a "product" for the purpose of strict liability.  See Escola v. Coca-Cola Bottling Co. of Fresno, 150 P.2d 436 (Cal. 1944).  In any given case, part of the law's goal in relation to liability will be to protect defenseless victims and possibly to spread risks/costs amongst society.  To rule on that basis alone, without reflection of the other considerations, would make all manufacturers/makers subject to strict liability for alleged defects in their material.  That cannot be the case for the obvious reason, among others, that the doctrine is limited to "products."

Before concluding, the Court shall address Claypool Plaintiffs' additional arguments that a determination at this stage of the litigation, when the law surrounding what constitutes a "product" is not black and white, would work an injustice on Plaintiffs.  Claypool Plaintiffs attempt to distinguish cases that

25

immunized the defendants from strict liability because they were decided on summary judgment motions, rather than motions made pursuant to Fed. R. Civ. P. 12(c), and because all but one interpreted law other than Hawaii's.  Claypool Plaintiffs argue that granting judgment on the pleadings at this stage would be "downright unfair" because of the factual issues surrounding whether the various manuals and publications in the Diving Program amount to a "product."  Certainly, 12(c) motions do not have the benefit of affidavits/declarations and other evidence to assist a court in determining whether a plaintiff has made factual allegations, which, if proven, could establish essential elements at trial, e.g., that the Diving Program, in fact, is a product.  The Court, however, does not see the necessity of such additional evidence here because it can make a determination as a matter of law, while taking all allegations in the pleadings as true (so long as they are not merely conclusory), based on the nature and the description of the Diving Program as set forth in the pleadings.  Accordingly, that the Court is dealing with a motion for judgment on the pleadings rather than summary judgment is of no import here.

Moreover, as Claypool Plaintiffs point out, the Court recognizes that none of the above cases were based on admiralty law, instead relying on the common law of California or Hawaii.  Still, the courts interpreted the meaning of the term "product" for the purpose of strict liability under either the Restatement of

26

Torts and/or the common law of the respective states, which incorporate the

Restatement for guidance.  See, e.g., Winter, 938 F.2d at 1034 n.2 ("The California

courts look to the Restatement (Second) of Torts, § 402A for guidance on products

liability law."); Birmingham, 833 P.2d at 75 n.4, 78 (relying on the Restatement

(Second) of Torts § 311 (1965) for a definition of negligent misrepresentation and

the other cases cited herein for the definition of "product" for the purpose of

determining strict liability, particularly Winter, 938 F.2d 1033).  If state law

principles would lead to the same result, regardless of the state, there is no need to

consider to which state law a court should look in admiralty, if any.  See East River

Steamship Corp., 476 U.S. at 865 n.2.

Because the Court finds that the Diving Program, which includes

instructional material, lessons, and training, constitutes a "service" rather than a

"product" for the purpose of strict liability, the Court GRANTS judgment on the

pleadings on Claypool and Isham Plaintiffs' strict liability claims (Claypool and

Isham Plaintiffs' First Cause of Action).

### 2.   Negligent Manufacture and Negligence/Negligent Misrepresentation

Claypool Plaintiffs brought a negligent manufacture cause of action

(Second Cause of Action), which they now claim should be construed as a general

negligence cause of action, based on the "defective and dangerous character" of the design of the Diving Program.  Isham Plaintiffs brought a general negligence and negligent misrepresentation claim (both labeled as Sixth Causes of Action) based on the "inherently unsafe and defective" design of the Diving Program.  The theories of negligence, negligent manufacture, and negligent misrepresentation are well-recognized theories of product liability.  When a product's <u>design</u> is defective, that is, when the foreseeable risks could have been reduced or avoided through the adoption of an alternative design, liability is imposed based on a negligence model.  <u>See</u> Restatement (Third) of Torts §§ 2(b) & 2(c) and Comment(a).  In other words, unlike manufacturing or construction defects in products, the claimed problem is with the actual design of the product, which a maker may or may not have been able to make safer through a better design.   Generally, a reasonableness test is applied to determine whether a better design could have made the product safer.  <u>See</u> Restatement (Third) of Torts §§ 1 and 2, Comment(a).  That is consistent with the Ninth Circuit's adoption of the negligence principles in the Restatement (Second) of Torts § 395 that were incorporated into general maritime law.  <u>See</u> <u>Matthews</u>, 854 F.2d at 1168.  Restatement (Second) of Torts § 395 provides:

> A manufacturer who fails to exercise reasonable care in
> the manufacture of a chattel which, unless carefully
> made, he should recognize as involving an unreasonable
> risk of causing physical harm to those who use it for a
> purpose for which the manufacturer should expect it to be
> used and to those whom he should expect to be
> endangered by its probable use, is subject to liability for
> physical harm caused to them by its lawful use in a
> manner and for a purpose for which it is supplied.

Comment (b) to Restatement (Second) of Torts § 395 clarifies that the section

applies to "products" through the repeated use of that term.  Additionally, although

"chattel" is not defined, Black's Law Dictionary 95 (2d ed. 2001) defines chattel

as: "[m]ovable or transferable property; esp., personal property," with "chattel

personal" being defined as "[a] tangible good or an intangible right (such as a

patent."

Claypool Plaintiffs claim that, however labeled, their cause of action

states a claim for negligence, which is well-recognized in maritime law.  There is

no dispute that such a claim exists under maritime law.  Rather, the dispute

surrounds whether their claim is based on product liability, which, according to the

substance of their complaint, it is.  To be clear, Claypool and Isham Plaintiffs'

claims of negligence are not based on a defect in a tangible product such as a

"buoyancy compensator vest," Sinclair v. Soniform, 935 F.2d 599, 603 (3d Cir.

1991), or against Plaintiff Isham (or another employee), as the instructor, for

29

failing to provide adequate care (or a similar argument).  See id.; Kuntz v. Windjammer "Barefoot" Cruises, Ltd., 573 F. Supp. 1277, 1282 (W.D. Penn. 1983) (finding an employee of a cruise line in an open water dive negligent in the wrongful death of a dive course participant).  In fact, Claypool Plaintiffs commend Mathew Isham's actions, stating that "Isham's actions were in complete compliance with PADI's published guidelines" and that "Isham lost a leg heroically trying to pull his hapless student clear."  The only claims, by both set of Plaintiffs, relate to the defective design of the Diving Program, which, however framed, is not a product for the purpose of sustaining a negligence or negligent manufacture claim based on the defective design of the Diving Program.  The Court, therefore, GRANTS judgment on the pleadings in favor of Defendants on Claypool Plaintiffs' Negligent Manufacture (Second Cause of Action) and Isham Plaintiffs' Negligence (Sixth Cause of Action) claims.

As for Negligent Misrepresentation, which claim Isham Plaintiffs brought, Isham Plaintiffs argue that Defendants' material omissions and/or misrepresentations regarding the Diving Program were made without exercise of reasonable care.  Specifically, they contend that Defendants failed to disclose to Isham all necessary information to decide whether or not it was safe to instruct inexperienced divers in open ocean waters through the Diving Program.  That

30

failure to disclose includes relevant information about the safety and/or hazards of

its Diving Program and the increasing number of deaths, injuries or otherwise

resulting from the scuba courses.  Hawaii follows the Restatement (Second) of

Torts § 552 on negligent misrepresentation, which provides as follows:

> (1) One who, in the course of his business, profession or
> employment, or in any other transaction in which he has
> a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by
> their justifiable reliance upon the information, if he fails
> to exercise reasonable care or competence in obtaining or
> communicating the information. . . .

See State by Bronster v. United States Steel Corp., 919 P.2d 294 (Haw. 1996).  As

in United States Steel Corp., the Court does not interpret Isham Plaintiffs' claim as

one stemming from a claim of negligence in the design or construction of the

Diving Program.  See id. at 304.  Rather, recovery for Isham's personal injuries

stems from a claim that Defendants did not exercise reasonable care or competence

in communicating and/or omitting necessary information about the risks posed in

administering the Diving Program and statistics concerning deaths and injuries

resulting from such courses.[6]  See id.

---

[6]     Because Isham is alleging physical injuries and not injuries to the
product itself, this case does not implicate the "economic loss" rule, i.e., that one
may not sustain a cause of action for negligent misrepresentation on the basis of

(continued...)

Moreover, there is no requirement in Hawaii that a negligent misrepresentation claim must be limited to parties whose business is to supply information for the guidance of others.  See United States Steel Corp., 919 P.2d at 307.  Rather, Defendants only are required to "have a pecuniary interest in the transaction or context in which the information is supplied in order to merit the imposition of a duty of care in obtaining and communicating the information."  See id. at 308.  That information can be supplied in "the guidance of others in their transactions with third parties" for an indirect or direct profit.  Id.  Based on the pleadings, Defendants appear to have such an interest here in the use of their Diving Program, that is, they offer the program, presumably, in return for some form of payment.

Notwithstanding, Defendants claim that, because Isham Plaintiffs did not raise this claim in their original Complaint, but rather raised it in their First Amended Complaint filed two years after the accident, this claim is barred by the applicable two-year statute of limitations.  See Haw. Rev. Stat. § 657-7.  That statute is the catch-all statute of limitations for personal injury actions when no

---

[6](...continued)
economic loss to the product alone (which generally is not recoverable in tort).
See East River S.S. Corp., 476 U.S. at 868-71; United States Steel Corp., 919 P.2d at 301.

specific statute applies.  See Pele Defense Fund v. Paty, 837 P.2d 1247, 1260 n. 14

(Haw. 1992).  Because the instant claim is in the nature of personal injury, the

Court finds that Haw. Rev. Stat. § 657-7 applies to the instant action.[7]  Cf. Au v.

Au, 626 P.2d 173, 179 (Haw. 1981) (finding that Hawaii's general six-year statute

of limitations for personal actions, Haw. Rev. Stat. § 657-1(4), applied to

fraudulent representations concerning the condition of a home inducing the

appellant to purchase it because the nature of the claim was not physical injury to

the property).

The question now turns on whether Isham Plaintiffs may sustain their

negligent misrepresentation claim, even though the initial Complaint filed within

the applicable statute of limitations did not contain that claim (or a similar one,

alleging only general negligence, strict liability, and breach of warranty).  The

Court answers in the negative.  "It is the almost universal rule that when an

amended complaint states a new and different cause of action from that undertaken

to be stated in the original complaint and is not offered until the cause of action

therein alleged is barred by the statute of limitations it should on objection be

disallowed."  Brown v. Bigelow, No. 1740, 1927 WL 3273, at *6 (Haw. 1927).

That all necessary facts were included within the original complaint does not alter

---

[7]        Isham Plaintiffs provide no argument to the contrary.

this result.  See Union Pac Ry. Co. v. Wyler, 158 U.S. 285, 295-96 (1895).  Had

Isham Plaintiffs alleged a cause of action similar to or that could be construed as a

cause of action sounding in negligent misrepresentation, the result might be

different.  As it is, the Court finds that, even if Isham Plaintiffs legally may have

been able to maintain a negligent misrepresentation claim, Isham Plaintiffs' claim

nevertheless is barred by the applicable statute of limitations.  The Court, therefore,

GRANTS judgment on the pleadings on Isham Plaintiffs' Negligent

Misrepresentation claim (also labeled a Sixth Cause of Action).[8]

        The Court anticipates the argument that the claim for negligent

manufacture actually included a claim for negligent misrepresentation.  That

argument lacks merit because Claypool Plaintiffs not only failed to bring that claim

as a cause of action in their Complaint, but they also failed to mention such a cause

of action in their opposition to Defendants' motion.  Instead, they focus on a

"general negligence" theory, which, as the Court has found, is not a viable cause of

action on the facts and allegations propounded in this case.  Claypool Plaintiffs

brought a similar cause of action for fraudulent concealment/failure to warn, which

the Court shall address in turn, but they simply did not argue or present facts to

---

        [8]     As will be discussed, Plaintiffs may, however, maintain a cause of
action for fraudulent concealment as an equitable claim regardless of the statute of
limitations.

support a negligent misrepresentation claim in their pleadings.[9]  Accordingly, the

Court will not consider such a claim for Claypool Plaintiffs.

### 3. Breach of Warranty

Claypool and Isham Plaintiffs' causes of action for breach of

warranty, including Isham Plaintiffs' breach of express and implied warranties, are

based on material defects in the Diving Program.  State law, not admiralty, governs

breach of warranty claims.  See East River, 476 at 872 n.7; see also Yamaha Motor

Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996) ("The exercise of admiralty

jurisdiction [] 'does not result in automatic displacement of state law'").  Claypool

Plaintiffs argue that California state law should apply because Defendants are

residents of California; Isham Plaintiffs present no argument on this issue (or any

other issue besides strict liability); Defendants apply Hawaii law.  In light of the

disagreement, the Court must apply the forum state's choice of law rules, that is,

Hawaii's.  See Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005).  In

determining the law to apply, Hawaii courts look "'to the state with the most

significant relationship to the parties and subject matter.'"  Mikelson v. United

---

[9]      As discussed in section III, Claypool Plaintiffs request leave to amend their Complaint should the Court find that Defendants' motion has merit.  For the reasons stated therein, the Court shall not permit such an amendment, given the facts and the circumstances of this case.

Servs. Auto. Ass'n, 111 P.3d 601, 607 (Haw. 2005) (quoting Lewis v. Lewis, 748 P.2d 1362, 1365 (Haw. 1988)).  The focus is on the state that would have the strongest interest in having its laws applied.  See id.

Here, Defendants, though organized under the laws of the State of California, are authorized to do business (and do conduct business) as a dive training agency in the State of Hawaii and as the author and publisher of dive training standards and manuals in the State of Hawaii.[10]  The Diving Program at issue utilizes those standards and manuals in its performance of services in the State of Hawaii.  Furthermore, the relevant acts and injuries occurred in waters surrounding the State of Hawaii, and all services were performed in the State of Hawaii.  Accordingly, the Court shall apply Hawaii law to the instant case.

Because breach of warranty claims are grounded in the Uniform Commercial Code (UCC), Plaintiffs apparently assume, without argument, that the Diving Program constitutes a "good" within the meaning of the UCC.  See Hawaii Revised Statutes ("Haw. Rev. Stat.") § 490:2-102 (providing that Hawaii's UCC applies to transactions in goods unless otherwise stated).  Haw. Rev. Stat. § 490:2-105(1) provides the definition of goods: "'Goods' means all things (including

---

[10]     CIVCO is the only Defendant that is not specifically noted as being authorized to do business in Hawaii.

specially manufactured goods) which are movable at the time of identification to

the contract for sale other than the money in which the price is to be paid,

investment securities (Article 8) and things in action."  Hawaii Supreme Court has

interpreted personal injury actions grounded in warranty to be synonymous with

tort strict products liability claims.  See Larsen v. Pacesetter Sys., Inc., 837 P.2d

1273, 1284 (Haw. 1992) ("Thus the tort action for strict products liability is the

warranty action for tangible injury to persons and property stripped of its

contractual mask.") "[W]here a plaintiff seeks to recover for personal injury in

warranty, the elements of the action should be governed by the same policies

which presently shape the elements of a tort strict products liability claim."  Id.

For the same reasons that the Diving Program does not constitute a product, the

Court finds that the Diving Program does constitute a "good" for the purpose of

breach of warranty, particularly given that both causes of action rely on the same

factual allegations and essentially the same arguments.  The Court, therefore,

GRANTS judgment on the pleadings on the Breach of Warranty claims (Claypool

Plaintiffs' Third Cause of Action; Isham Plaintiffs' Second and Third Causes of

Action).

4. <u>Fraudulent Concealment/Failure to Warn claims</u>

Similar to negligence based on a defective product design, a product may be defective because of inadequate instruction or warning, for which liability may be imposed.  <u>See</u> Restatement (Third) of Torts §§ 2(b) & 2(c) and Comment(a).  As the Diving Program does not constitute a "product," Plaintiffs may not maintain a failure to warn claim based on inadequate instruction or warning of the dangers of the defects in the Diving Program.

Notwithstanding, Plaintiffs also allege fraudulent concealment, which is grounded in the same factual allegations as the failure to warn claim.  Despite the same factual underpinning, Plaintiffs may maintain a state law fraudulent concealment claim, which does not require that the Diving Program be a "product." As the Supreme Court has established, the application of maritime law does not automatically displace state law claims.  <u>See</u> <u>Yamaha Motor Corp., U.S.A.</u>, 516 U.S. at 206; <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 545-46 (1995).  Additionally, the Ninth Circuit expressly has found that fraudulent concealment claims may lie in admiralty cases.  <u>See</u> <u>Thorman v. Am. Seafoods Co.</u>, 421 F.3d 1090, 1094 (9th Cir. 2005) (recognizing a claim of fraudulent concealment in admiralty law in a case involving settlement sheets for the payment of fish that were mailed after each fishing trip).  As Defendants

concede, because such claims are equitable, a claim of fraudulent concealment equitably tolls the statute of limitations.  See id. at 1094 n.3.  To prevail on such a claim, Plaintiffs must have pled facts that, when taken as true, could establish that (1) Defendants "affirmatively misled" them concerning "the operative facts that gave rise to [Plaintiffs'] claim," and (2) Plaintiffs "'had neither actual nor constructive knowledge'" of these operative facts despite their diligence in trying to uncover them."  Id. (citing Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc., 858 F.2d 499, 502 (9th Cir. 1988).[11]  As for the first prong, "[m]erely keeping someone in the dark is not the same as affirmatively misleading him."  Id. at 1095.  Taking affirmative steps to mislead someone actively rather than passively constitutes affirmative conduct.  See id. at 1096.  As for the second prong, the purpose of equitable tolling, particularly in reference to fraudulent concealment claims, "focuses on whether there was excusable delay by the plaintiff" and "may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."  Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1120 (9th Cir. 2006).

---

[11]     Defendants argue that Hawaii state law should apply to prove a claim of fraud, not fraudulent concealment.  Although the Court recognizes Claypool Plaintiffs' re-characterization of the allegation in the Complaint, the Court looks to the allegation made in the Complaint only, declining to address the re-characterization as general "fraud" because that was not alleged.

Claypool Plaintiffs claim that Defendants knew of the material defects in the Diving Program that:

> (1) exposed inexperienced novices such as Plaintiff Dennis Claypool to an obvious and unreasonable risk of underwater injury, buoyancy problems, and the likelihood of becoming separated from their dive instructor and fellow [Diving Program] students, and

> (2) made the aforesaid [Diving Program] extremely hazardous for us in navigable, open ocean waters.

Similarly, Isham Plaintiffs claim that Defendants knew of the material defects in the Diving Program that:

> (1) inexperienced, novice divers would be unable to master the skill of regulating buoyancy after receiving only minimal instruction in a program which all [Diving Program] instructors were obligated to follow,
> (2) inexperienced diver experiencing buoyancy problems would likely become separated from the instructor and begin to rapidly surface,
> (3) a student-teacher ratio of 1:4 was inadequate for first time, inexperienced novices in the ocean's navigable waters, and
> (4) its dive instructors would be faced with an unreasonable risk of harm if the PADI guidelines for instructing participants of the [Diving Program] were followed.

Isham Plaintiffs, furthermore, allege that other instructors had warned Defendants "that on a yearly basis, a significant number of students and/or instructors had died and/or suffered serious injuries while participating in PADI's programs."  Those

40

actions, according to both Isham and Claypool Plaintiffs, resulted in fraudulent

concealment of known risks associated with the Diving Program.  Plaintiffs also

claim that, at all times, they were ignorant of such risks and, had they known of

them, the Claypools would not have enrolled and Isham would not have

participated as an instructor in the Diving Program.

Here, the allegations that Defendants "affirmatively misled" Plaintiffs

concerning the known risks associated with the Diving Program, ultimately giving

rise to Plaintiffs' claims, may rise to the level of fraudulent concealment if

Plaintiffs can prove that Defendants, in fact, actively concealed those known risks.

By contrast, Plaintiffs' allegation that they were ignorant of the known risks does

not, on its face, support a finding of due diligence.  Plaintiffs do not mention in

their pleadings any efforts undertaken to uncover the risks known to Defendants,

thus demonstrating diligence, even in terms of questioning Isham, other instructors,

or management about the risks associated with the Diving Program.  As such, the

claims seem dubious at best on the facts of this case, given that scuba diving is an

inherently dangerous activity with associated risks that Plaintiffs likely could have

discovered (if they had not already) upon due diligence.

Nonetheless, because the instant action is still at the pleadings stage

and the Court has not had an opportunity to consider anything outside of the

pleadings, the Court recognizes that discovery may uncover information pertaining to Plaintiffs' diligence in discovering the known risks.  Accordingly, the Court finds that for the purpose of the instant motion, Plaintiffs have pled sufficient facts to withstand judgment on the pleadings.  Notwithstanding this determination, if all elements cannot be proven at a later time, Plaintiffs' claims, of course, shall fail. The Court, therefore, DENIES judgment on the pleadings on Plaintiffs' Fraudulent Concealment claims (Claypool Plaintiffs' Fifth Cause of Action; Isham Plaintiffs' Fourth Cause of Action).  Plaintiffs' arguments concerning these claims, however, are limited to fraudulent concealment, as they may not maintain claims for a failure to warn.

### B.  Gross Negligence and Willful and Wanton Indifference

Plaintiffs bring "gross negligence and willful and wanton indifference" claims for the purpose of seeking punitive damages.  "Punitive damages are available under the general maritime law and may be imposed for conduct which manifests reckless or callous disregard for the rights of others or for conduct which shows gross negligence or actual malice or criminal indifference." Churchill v. F/V Fjord, 892 F.2d 763, 772 (9th Cir. 1989) (citation and internal quotation marks omitted).  Plaintiffs' gross negligence claims are similar to, and

possibly based on, those made for fraudulent concealment.  Isham Plaintiffs claim

that Defendants:

> a.  Knew that it was extremely dangerous to permit
> instructors to take groups of up to four inexperienced
> scuba divers into the ocean water, while wearing scuba
> equipment for the first time, and without proper
> instruction in the buoyancy compensator device;
> b.  Knew that withholding information from Plaintiff
> Mathew Isham regarding the extremely dangerous nature
> of the [Diving Program] would induce him to continue
> his participation as an Open Water Dive Instructor;
> c.  Knew that by continuing to encourage and permit its
> instructors to engage in risky dangerous conduct
> unbeknownst to them would serve to bolster their
> corporate profits; and
> d.  Knew that by deliberately encouraging instructors and
> novices to continue to participate in their risky DSD
> [Discover Scuba Diving] program, future profits could be
> made at the cost of human life and limb.

Claypool Plaintiffs' claim is essentially the same.  Claypool and Isham Plaintiffs

also contend that had Defendants exercised a "scintilla or care" or a "modicum of

regard," they never would have designed the Diving Program in the way that they

did.  Furthermore, they argue that, in willfully and wantonly conducting

themselves with gross, reckless, and callous disregard for Plaintiffs' safety,

Defendants acted with deliberate indifference, entitling Plaintiffs to an award of

punitive or exemplary damages.

Plaintiffs' claims boil down to an allegation that Defendants deliberately concealed and/or withheld known information concerning safety hazards related to the Diving Program to bolster corporate profits at the expense of human life, while at the same time encouraging use of the program to induce participants.  The  facts of this case suggest that even if Defendants actively concealed potential risks in the Diving Program, that act of fraudulent concealment likely would not rise to the level of recklessness or callous disregard to human life. Still, given that the instant motion is one for judgment on the pleadings, depending on the extent of the acts that Defendants undertook to conceal the known risks, the Court concludes that, if such deliberate concealment were made upon Plaintiffs' due diligence in trying to uncover the risks involved, Plaintiffs may be able to sustain a claim of punitive damages, however strained that argument may appear now.  Thus, the Court DENIES judgment on the pleadings in regard to Plaintiffs' Gross Negligence and Willful and Wanton Indifference punitive damages claims (Claypool Plaintiffs' Fourth Cause of Action and Isham Plaintiffs' Seventh Cause of Action).  Again, if malice cannot be proven at a later time, Plaintiffs' claims, of course, shall fail.

C.  Emotional Distress and Loss of Consortium

Sheryll, Scott, and Kristin Claypool bring claims for emotional

distress for witnessing the alleged injuries and for being placed at risk of injuries

based on the above claims, including fraudulent concealment.  Mathew and

Roxanne Isham also claim emotional distress based on Defendants' intentional or

reckless acts leading to Mathew's alleged injuries and Roxanne's emotional

distress for, apparently, having to deal with the consequences of Defendants' acts.

Similarly, Sheryll claims loss of consortium as a result of Dennis's injuries, as does

Roxanne Isham as a result of Mathew's injuries.

1.  Emotional Distress

Plaintiffs' respective complaints do not clarify the type of emotional

distress alleged, that is, whether they are alleging negligent or intentional.  In their

opposition, however, Claypool Plaintiffs clarify that their Sixth Cause of Action

for emotional distress refers to negligent infliction of emotional distress.  Isham

Plaintiffs do not address Defendants' emotional distress argument one way or

another, though their allegations of intentional and/or reckless acts and/or

omissions on the part of Defendants suggest that they are claiming intentional

and/or negligent emotional distress.

Negligent infliction of emotional distress ("NIED") claims are cognizable under general maritime law.  See Fawkner v. Atlantis Submarines, 135 F. Supp. 2d 1127, 1134 (D. Haw. 2001).  Although the Ninth Circuit has not adopted a threshold standard for such claims under maritime law, the Ninth Circuit has three recognizable standards: "physical impact," "zone of danger," or "relative bystander."  See id.  If negligence were at play, Mathew Isham would be the only Plaintiff that possibly could recover for emotional distress under the physical impact test, which requires an accompanying injury or contact.[12]  See id.  Likewise, Sheryll, Scott, and Kristin possibly could recover under the "zone of danger" test for "witness[ing] the peril of another" and being "threatened with physical harm" as result of the alleged negligence."  Id.  Roxanne could not recover under any standard, including the relative bystander test, because there are no factual allegations that she physically was near the scene of the accident and, therefore, she could not have personally observed it.  See id.; see also Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1409 (9th Cir. 1994).

Even if those Plaintiffs could satisfy one of those standards, they still must be able to satisfy the elements of a NIED claim.  To satisfy such a claim,

_____

[12]     Claypool Plaintiffs do not allege emotional distress in relation to Dennis, the injured victim, but only for Sheryll, Scott, and Kristin.

Plaintiffs must prove three elements: (1) Defendants engaged in negligent conduct, (2) Plaintiffs suffered serious emotional distress, and (3) the negligent conduct was a legal cause of the serious emotional distress.  See Calleon v. Miyagi, 876 P.2d 1278, 1288 (Haw. 1994).  Plaintiffs have failed to allege facts that would support a theory of negligence on the part of Defendants.  Additionally, the State of Hawaii has adopted a standard to determine the seriousness of the emotional distress similar to that contained in the Restatement (Second) of Torts § 46, comment j.  To find serious mental distress, a court must conclude that "a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  Rodrigues v. State, 472 P.2d 509, 520 (Haw. 1970).  Plaintiffs have pled facts that may, if proven, rise to the level of serious emotional distress, such as experiencing great emotional, mental pain, suffering and distress, the intensity and duration of which are likely to continue.  It is not enough, however, to prove that serious mental distress has resulted from injuries suffered.  Plaintiffs also must have pled facts that would prove causation.  That Plaintiffs have failed to do.  Because Plaintiffs have failed to plead facts that would prove negligence on the part of Defendants and facts that would prove that Defendants' negligence was the cause of Plaintiffs' serious emotional distress, Plaintiffs' NIED claims may not withstand judgment on the pleadings.

47

There still remains the possibility that Isham Plaintiffs' intentional infliction of emotional distress claim ("IIED") may survive.[13]  This Court has recognized a claim for IIED under general maritime law, consistent with Ninth Circuit precedent.  See Fawkner, 135 F. Supp. 2d at 1134.  As applied in Fawkner, Restatement (Second) of Torts § 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  135 F. Supp. 2d at 1135-36.  Moreover, as further recognized in Fawkner, Restatement (Second) of Torts § 46, comment d. provides the following for "outrageous conduct":

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an

---

[13]    As stated, because Claypool Plaintiffs effectively concede that their Sixth Cause of Action relates to negligent infliction of emotional distress only, the Court addresses an IIED claim in relation to Isham Plaintiffs only.  See Claypool Plaintiffs' Opp'n at 26 ("The Claypools' Sixth Cause of Action states a claim for negligent infliction of emotional distress or 'NIED.'").

average member of the community would arouse his
resentment against the actor and lead him to exclaim,
"Outrageous!"

Id. at 1136 n. 4.  The Court does not question whether Mathew and Roxanne

suffered severe emotional distress based on Mathew's claimed injury, i.e., the

amputation of his left leg above the knee, as that level of injury surely could cause

severe emotional distress to any individual and his or her spouse.  The question

really surrounds whether Defendants caused that distress through "extreme and

outrageous conduct intentionally or recklessly," which factual allegations Isham

Plaintiffs have failed to plead.  Even if Plaintiffs could prove that Defendants acted

with malice for an award of punitive damages based on a deliberate or

"intentional" withholding or concealment of known information in the Diving

Program, that proof still would not necessarily support a finding that Defendants'

conduct was "so outrageous in character" and "so extreme in degree" that

Defendants surpassed "all bounds of decency" in a civilized community.  The

design of the Diving Program, even if designed for company profit, simply would

not alone, without further pleadings of statements and/or omissions or acts made in

support of that program by Defendants' agents and/or employees, rise to the level

of extreme or outrageous conduct.  The Court, therefore, GRANTS judgment on

49

the pleadings on Plaintiffs' emotional distress (NIED and IIED) claims (Isham

Plaintiffs' Ninth Cause of Action; Claypool Plaintiffs' Sixth Cause of Action).

## 2. Loss of Consortium

At the outset, Plaintiffs do not bring claims of loss of consortium or

society for the wrongful death (or injury) of a seaman against an employer for

negligence under the Jones Act or against nonemployers (or employers) on other

grounds, such as unseaworthiness, under the Death on High Seas Act, which

claims would not be permitted.  See Miles v. Apex Marine Corp., 498 U.S. 19, 20,

36-37 (1990) ("Damages recoverable in a general maritime cause of action for the

wrongful death of a seaman do not include loss of society").  Although the law

surrounding loss of consortium claims in maritime law is indefinite, the Supreme

Court has noted the willingness of courts of admiralty to award damages for loss of

consortium, citing in support N.Y. & Long Branch Steamboat Co. v. Johnson, 195

F. 740 (3d Cir. 1912).  See Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 590 n.25

(1974), superceded by statute as stated in, Miles, 498 U.S. at 20.  In Johnson, the

Third Circuit held that the husband of a woman who was injured as a passenger on

a steamboat from New York to Long Branch, New Jersey was allowed to maintain

a suit in admiralty for loss of society.   See 195 F. at 741-42; see also cf. Am.

Export Lines, Inc. v. Alvez, 446 U.S. 274, 276 (1980) (concluding that general

maritime law affords a "wife of a harbor worker injured nonfatally aboard a vessel in state territorial waters to maintain an action for damages for the loss of her husband's society").  The Ninth Circuit has recognized a cause of action for loss of consortium for "beneficiaries" of passengers killed or injured on state territorial waters.  Chan, 39 F.3d at 1407.  Although the wives here are not beneficiaries in the typical sense, the Court looks to Chan for guidance.  In Chan, the Ninth Circuit affirmed the district court's dismissal of loss of consortium and loss of society claims by a husband, his wife, and their three children, finding recovery unavailable under general maritime law under the circumstances of that case for injuries that the husband and a child sustained while on a cruise ship's raft that capsized, throwing them into the surf.  See id. at 1408.  In that case, however, the injuries did not occur in state territorial waters, but rather occurred in the South Pacific near Tahiti, which the Ninth Circuit specifically recognized.  See id. at 1402, 1407.

By contrast, the injuries here occurred in state territorial waters. Because this action is based on alleged tortious conduct occurring in state territorial waters resulting in injury to individuals who are not claimed seamen and the conduct is not alleged to have occurred through the negligence of an employee, the Court concludes that the wives, Roxanne and Sheryll, may bring a cause of

action for loss of consortium.  That the injury occurred in territorial waters rather than on land does not, in this case, limit the wives' remedies at law.

The only remaining cause of action to which the loss of consortium claims may attach, however, is fraudulent concealment, as Plaintiffs have failed to plead successfully a claim of negligence against Defendants.  Generally, loss of consortium claims are attached to claims of negligence, but such claims are not limited to negligence.  See, e.g., Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 551-52 (1997) (bringing causes of action for negligence under the Jones Act and unseaworthiness under general maritime law with a loss of consortium claim by the spouse); Pulawa v. GTE Hawaiian Tel., 143 P.3d 1205 (Haw. 2006) (bringing negligence and derivative claims for loss of consortium).  They may attach where a defendant carries out alleged tortious conduct that subjects the defendant to liability for such harm.  See Restatement (Second) Torts § 693, comments a. and b., and § 6, comment a.  Consequently, Plaintiffs Sheryll and Roxanne may maintain their loss of consortium claims based on Defendants' alleged fraudulent concealment of known risks associated with the Diving Program that allegedly caused Plaintiffs' injuries.  If, however, Plaintiffs are unable to prove fraudulent concealment, then Sheryll and Roxanne's loss of consortium claims shall fail as well.  The Court, therefore, DENIES judgment on the pleadings on Sheryll and

Roxanne's loss of consortium claims (Claypool Plaintiffs' Seventh Cause of Action; Isham Plaintiffs' Tenth Cause of Action).

### D.  Isham Plaintiffs' Unfair and Deceptive Trade Practices

The final cause of action is Isham Plaintiffs' unfair and deceptive trade practices claim under Haw. Rev. Stat. §§ 480-1, et seq., which applies to consumers who have been injured as a result of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  See Haw. Rev. Stat. §§ 480-2, 480-13.  Without determining whether Mathew Isham is a consumer for the purpose of this statute, the Court finds that Isham Plaintiffs may not maintain this cause of action on the facts of this case because Hawaii's unfair and deceptive trade practices statute does not apply to personal injury claims.  See Blowers v. Eli Lilly and Co., 100 F. Supp. 2d 1265, 1267-68 (D. Haw. 2000) (holding that Haw. Rev. Stat. §§ 480-2 and 480-13 do not provide a remedy for actions based on personal injury because the purpose of the statute "is to prevent deceptive practices by businesses that are injurious to other businesses and consumers").  Isham Plaintiffs' claim indisputably is based on a loss resulting from personal injury: "As a result of [Mathew Isham's] participation in the [Diving] Program, Plaintiff Mat[]hew Isham is forever precluded from teaching any further

diving courses for which he is certified to teach because of the extent of his injuries."[14]  (<u>Complaint</u> ¶ 84.)  For that reason, the Court GRANTS judgment on the pleadings on Isham Plaintiffs' Unfair and Deceptive Trade Practices claim (Fifth Cause of Action).

III.   <u>Claypool Plaintiffs' Request for Leave to Amend</u>

In their opposition, Claypool Plaintiffs request leave to amend their Complaint in the event that the Court grants Defendants' motion, which Defendants oppose.  Claypool Plaintiffs claim that they should be given an opportunity to correct any pleading deficiencies  in the interest of justice before their claims are dismissed.  <u>See</u> Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  In <u>Foman</u>, the Supreme Court found that, pursuant to Fed. R. Civ. P. 15(a), "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  371 U.S. at 182.  It went on to state: "[o]f course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave

---

[14]     As with all other claims besides strict liability, Isham Plaintiffs do not address this argument at all in their opposition.

without any justifying reason appearing for the denial is not an exercise of

discretion." Id.  "Whether to grant or deny a motion for leave to amend is

generally determined by reference to the following factors: undue delay, bad faith,

futility of amendment, prejudice to the opposing party, and repeated failure to cure

deficiencies by amendments previously allowed."  Grace v. Drake, 832 F. Supp.

1399, 1402 (D. Haw. 1991).

Here, although Isham Plaintiffs have amended their Complaint on one

occasion, Claypool Plaintiffs have not.  The majority of Claypool Plaintiffs' claims

against Defendants rest on the notion that the Diving Program constitutes a

product, under which theory neither set of Plaintiffs can sustain a cause of action.

Claypool Plaintiffs did not allege any facts that would sustain a negligence claim

against Defendants, for example, for failure to train Mathew Isham or another

agent/employee or for the negligent acts/omissions of Mathew.  Claypool Plaintiffs

not only failed to suggest that Mathew's training or reaction to the situation was

negligent, but they actually applauded Mathew for his heroic actions.  Although, as

previously stated, Claypool Plaintiffs might argue that the Court should permit

them to amend their Complaint to allege negligent misrepresentation, Claypool

Plaintiffs, although they had a chance to advance that theory, did not make any factual allegations to support it in their Complaint or in their opposition.

Notably, Claypool Plaintiffs present no changes that they would make upon amendment; they merely request a second bite at the apple to allege an entirely new set of claims in case their first set of arguments and/or theories fail. Granted, there is no suggestion that burdensome discovery has taken place so far, thus possibly prejudicing Defendants in that way. Still, Defendants have utilized time and resources to respond fully to each of Plaintiffs' current allegations. Having to respond to a second and entirely new set of allegations for the sole reason that Claypool Plaintiffs apparently believe that they should be able to succeed on some claim, whatever that claim may be, against Defendants is not a sound reason to permit amendment. To allow amendment on that basis alone would prejudice Defendants by giving Claypool Plaintiffs, who are represented by counsel, multiple opportunities to present legal theories, at Defendants' expense, until they get one right, particularly given the length of time that has passed since the accident in 2004. To be sure, Plaintiffs had a proper subject of relief against a different set of defendants, and they obtained relief against those defendants in previous settlements that occurred before this Court. See Mathew Isham, et al. v.

56

Blue Dolphin Charters, Ltd., et al., CV No. 04-559 HG BMK and Dennis Claypool

v. Captain Andy's Sailing, Inc., Blue Dolphin Charters, Ltd., and Blue Dolphin

Diving, Ltd., CV No. 04-570 HG BMK.  (Docket Nos. 143, 159, 162, 174.)  That

is not to say, however, that the same applies here against the instant Defendants.

If Plaintiffs had been proceeding pro se, had they presented alternative

arguments/claims to the Court that might be legally cognizable upon amendment,

or had they alleged a different set of underlying facts and circumstances that easily

could have given rise to a sound legal argument, the result may be different.  As it

is, the Court will not condone a course of conduct whereby plaintiffs are given

multiple opportunities to file claims in the Court after dismissal until the plaintiffs

finally allege a theory of liability that is legally cognizable.  The Court, therefore,

DENIES Claypool Plaintiffs' request to amend their Complaint should the Court

find merit to Defendants' arguments (as it did).

## CONCLUSION

For the reasons stated above, the Court GRANTS judgment on the

pleadings in favor of Defendants on Claypool and Isham Plaintiffs' strict liability

claims (First Causes of Action for both); Claypool Plaintiffs' Negligent

Manufacture (Second Cause of Action) and Isham Plaintiffs' Negligence (Sixth

Cause of Action) claims; Isham Plaintiffs' Negligent Misrepresentation claim (also labeled as a Sixth Cause of Action); Claypool and Isham Plaintiffs' Breach of Warranty claims (Third and Second Causes of Action respectively), including Isham Plaintiffs' Breach of Express and Implied Warranties (Third Cause of Action); Isham and Claypool Plaintiffs' emotional distress claims (Ninth and Sixth Causes of Actions respectively), and Isham Plaintiffs' Unfair and Deceptive Trade Practices claim (Fifth Cause of Action).

For the reasons stated above, the Court DENIES judgment on the pleadings in favor of Claypool and Isham Plaintiffs' Fraudulent Concealment claims (Claypool Plaintiffs' Fifth Cause of Action; Isham Plaintiffs' Fourth Cause of Action), Claypool and Isham Plaintiffs' Gross Negligence and Willful and Wanton Indifference punitive damages claims (Claypool Plaintiffs' Fourth Cause of Action and Isham Plaintiffs' Seventh Cause of Action), and Plaintiffs Sheryll Claypool and Roxanne Isham's loss of consortium claims (Claypool Plaintiffs' Seventh Cause of Action; Isham Plaintiffs' Tenth Cause of Action).

The Court DENIES Claypool Plaintiffs' request to amend their

Complaint should the Court find merit to Defendants' arguments.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 23, 2007.


_____
David Alan Ezra
United States District Judge



Mathew Isham, et al. vs. Padi Worldwide Corporation, et al., Civil No. 06-00382 DAE-BMK, Dennis Claypool, et al. vs. Padi Worldwide Corporation, et al., Civil No. 06-00386 DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS CLAYPOOL PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ISHAM PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, JUDGMENT ON THE PLEADINGS; AND DENYING CLAYPOOL PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT