IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| MATTHEW ISHAM, and ROXANNE BEST ISHAM | ) ) ) | CV. NO. 06-00382 DAE BMK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| PADI WORLDWIDE CORPORATION, a California Corp., INTERNATIONAL-PADI, INC., aka PROFESSIONAL ASSOCIATION OF DIVING INSTRUCTORS, a California Corporation, DIVING SCIENCE AND TECHNOLOGY CORP., aka DSAT, a California Corporation, and CAPITAL INVESTMENTS & VENTURES CORPORATION, a.k.a. CIVCO, a California Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. _____ | ) ) ) | |
| DENNIS CLAYPOOL, SHERYLL CLAYPOOL, SCOTT CLAYPOOL, AND KRISTIN CLAYPOOL, | ) ) ) ) | CV. NO. 06-00386 DAE BMK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| PADI WORLDWIDE CORPORATION, a California Corporation, INTERNATIONAL- | ) ) ) | |

PADI, INC., aka PROFESSIONAL          )
ASSOCIATION OF DIVING                 )
INSTRUCTORS, a California             )
Corporation, DIVING SCIENCE           )
AND TECHNOLOGY CORP., aka             )
DSAT, a California Corporation,       )
                                      )
            Defendants.               )
_____       )
                                      )

ORDER GRANTING IN PART DENYING IN PART WITHOUT PREJUDICE
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
PLAINTIFFS DENNIS CLAYPOOL, SHERYL CLAYPOOL, SCOTT
CLAYPOOL, AND KRISTEN CLAYPOOL'S FIRST AMENDED COMPLAINT
AND GRANTING IN PART DENYING IN PART WITHOUT PREJUDICE
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFFS
MATTHEW ISHAM AND ROXANNE BEST ISHAM'S
FIRST AMENDED COMPLAINT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  On December 10, 2007, Defendants Padi

Worldwide Corporation, a California Corporation, International Padi, Inc., aka

Professional Association of Diving Instructors ("PADI"), a California Corporation,

and Diving Science and Technology corp., aka DSAT, a California Corporation

(collectively "Defendants") filed a Motion for Partial summary Judgment Re:

Plaintiffs Dennis Claypool, Sheryl Claypool, Scott Claypool, and Kristin

Claypool's First Amended Complaint.  (Doc. # 148).  On December 10, 2007,

Defendants filed a Motion for Summary Judgment Re: Plaintiffs Matthew Isham and Roxanne Best Isham's First Amended Complaint.  (Doc. # 150.)  After reviewing Defendants' motions and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE both of Defendants' Motions.  Defendants' motions are granted with respect to both sets Plaintiffs' claims for gross negligence/willful and wanton indifference.  Plaintiffs may, however, continue to pursue punitive damages as a remedy, but not as a separate cause of action.  Defendants' motions are denied without prejudice with respect to both Plaintiffs' claims for fraudulent concealment because that is a claim for fraud by omission of facts.  Defendants' motions are denied with respect to the Plaintiffs' loss of consortium claims.  Defendants' motions on the negligent misrepresentation claims are denied.

## BACKGROUND

Defendant PADI is the world's largest recreational diver training organization.  It has developed diver programs that are conducted by professional PADI members in approximately 175 countries and territories.  In addition to diver training programs, PADI has developed an introductory dive experience, which is a one-time dive for persons new to scuba diving, known as the Discover Scuba Diving Experience program ("Discover Scuba Experience ").

3

The Discover Scuba Experience was developed as a way for PADI to spur growth into its diving certification process.  PADI recognized that the vacation resort market was an important and increasing source of dive-certification candidates.  In the 1980s, PADI believed that the introductory dive experiences that were being offered in the vacation resort and cruise markets should be standardized, data should be disseminated to dive stores and dive participants, resort students should be registered, and a referral and follow-up program should be developed to route students to dive stores for PADI certification.  PADI thereafter developed and used the Discover Scuba Experience for these purposes as a means of growing its certification business.   PADI views the Discover Scuba Experience as a diver acquisition tool.

The Discover Scuba Experience includes a PADI "Discover Scuba Diving Instructor Guide" and a "Discovery Scuba Diving" participant's pamphlet. The Discover Scuba Experience is designed to "introduce people to scuba diving in a highly supervised and relaxed manner."  "Under the guidance of a PADI professional," the Discover Scuba Experience teaches new divers about "basic safety concepts" and how to "put on equipment and swim around underwater in a closely supervised environment."   The Discover Scuba Experience allows for non-

divers, and in some instances non-swimmers, to dive in open waters at depths of 40 feet.

PADI recognized that close supervision of the dive participants by the instructor was important, especially in the open water part of the experience, and that a critical factor in determining whether close supervision could be maintained was the student-instructor ratio.  PADI understood that the more participants there were, the more difficult it was for the instructor to maintain direct control and close supervision of each student.  PADI also recognized, however, that as the number of Discover Scuba Experience participants increased, the number of persons seeking to become PADI certified through PADI courses also increased, thereby increasing their business.  PADI initially set the participant-instructor ratio for the Discover Scuba Experience at six-to-one.  PADI selected this ratio after having conducted a survey via open-ended questions of its members regarding the Discover Scuba Experience.  The survey results revealed that while 89% of the PADI members responded that the number of students per instructor should be six or less, 65% of the respondents believed that the ideal number of students that should dive with one instructor in very favorable conditions was three or less, and 56% responded that the ideal ratio would be two-to-one.

Prior to launching the Discover Scuba Experience in 1993, PADI's introductory dive experiences were taught in a pool or in confined water that was shallow enough to stand up in.  In May 1991, PADI noted that this presented a problem in areas such as Hawaii that had few pools and PADI considered allowing dives off of the rear of a boat.  In the survey of its members discussed above, PADI asked its members about the maximum depth that should be allowed for these open water introductory dives in the Discover Scuba Experience.  85% of the respondents stated that the maximum depth of the introductory dive should be 30 feet or less.  Despite this response, PADI set the introductory dive depth at 40 feet.

In addition to the survey results, PADI received letters from its members who ran PADI dive instruction classes.  One such letter said "Please-consider changing the ratio to 2:1 (but whatever you do - DO NOT increase the ratio . . . [and] PLEASE-PLEASE-PLEASE-DO NOT change the maximum depth ratio limit of 30 feet."  (Claypool Pls.' Ex. 11) (emphasis in original).  Shortly after the Discover Scuba Experience was released, PADI received another letter, which was written by a PADI member who employed 102 PADI instructors and averaged 55 introductory divers a day.  The letter stated that "[p]ast experience has proven that even the most experienced of staff can have difficulty with only four participants even under 'ideal' conditions."  (Claypool Pls.' Ex. 12.)  The letter

6

also stated that the member was disappointed that he was not consulted because his experience in the field must be considered invaluable in ensuring that the standards were the safest and most enjoyable.  (Id.)  This PADI member was considered one of the top instructors in terms of the numbers of introductory dives he conducted per day.

Despite the survey results and the letters, PADI changed the maximum depth from 30 feet to 40 feet and set the participant-instructor ratio at six-to-one.  Near the end of 2001, PADI issued a training bulletin that encouraged instructors to take diver participants through short open lava tubes during the introductory Discover Scuba Experience dive.  The bulletin did not explain what exactly was a short lava tube, and did not provide advice on how to provide close supervision of all participants when some participants wanted to swim through a lava tube and others did not.  The only advice was to allow participants to decline swimming through a lava tube without embarrassment.

In the mid-1990s, a male diver participant died during a Discover Scuba Experience after experiencing an embolism from a rapid assent.  In 1997, a participant in the Discover Scuba Experience got separated from the group and died by drowning.  The Coast Guard investigated that death and determined that the drowning occurred because of the participant's diving inexperience and the

7

lack of direct supervision by the dive instructor.  The Coast Guard further

determined that the Discover Scuba Experience instructions were ambiguous with

respect to the meaning of direct supervision and in other respects.  The Coast

Guard strongly recommended that PADI clarify their Discover Scuba Experience

manual and that it was imperative that they provide clear instructions to help

prevent dive casualties.  In approximately 2001, PADI reduced the student-teacher

ratio from six-to-one to four-to-one.  Other than the reduction of the student-

instructor ratio, PADI did not provide evidence that it clarified its instruction

manual regarding direct supervision and/or swimming through lava tubes.

On July 20, 2004, while vacationing on the island of Kauai, Plaintiff

Dennis Claypool and  PADI-certified diving instructor, Plaintiff Matthew Isham

("Isham") were injured during a scuba diving accident near Makol'e Reef off of

the Napali Coast.  Dennis Claypool and his son, Scott, had never scuba dived

before or worn scuba equipment underwater.  They signed up for the Discover

Scuba Experience.  The Discover Scuba Experience was taught by Isham, who was

employed by Blue Dolphin Charters, Inc.

That afternoon, once anchored at Makol'e Reef, Claypool Plaintiffs

Sheryll and Kristin snorkeled in the waters inshore of the Blue Dolphin's mooring

site.  Around the same time, Isham took the other Claypool Plaintiffs, Dennis and

Scott, and two other student divers in the waters offshore of the mooring site.

Isham took the three students through an underwater lava tube near the bottom of

the water.  Dennis did not want to swim through the tube.  Dennis was permitted to

swim along outside of the tube.  Dennis experienced undetected buoyancy

problems, causing him to drift toward the surface of the water and to become

separated from the rest of the class.  Isham did not spot Dennis until he had risen to

the surface of the water in a busy navigation channel.  Before Isham could reach

Dennis to assist him, a tourist catamaran, known as the "M/V Spirit of Kauai,"

passed through the dive site at a speed of approximately 12 knots, striking and

injuring Isham and Dennis.  Based on allegations in Claypool Plaintiffs'

Complaint, the starboard hull and propeller of the catamaran slashed Dennis's right

forearm to the bone, shattered and displaced his right radius and ulna, and

transected all of the nerves, veins, muscles and tendons severing his right hand and

fingers.  Based on allegations in Isham Plaintiffs' Complaint, Isham suffered

severe injuries to his left leg, causing his left leg to be amputated above the knee.

Isham allegedly is unable to serve as an open water dive instructor any longer.

   A settlement occurred in a consolidated case involving Isham and

Claypool Plaintiffs that previously had been before this Court against other

defendants.  See Matthew Isham, et al. v. Blue Dolphin Charters, Ltd., et al., CV

No. 04-559 HG BMK and <u>Dennis Claypool v. Captain Andy's Sailing, Inc., Blue Dolphin Charters, Ltd., and Blue Dolphin Diving, Ltd.</u>, CV No. 04-570 HG BMK.

II.   <u>Procedural History</u>

On July 13, 2006, Matthew Isham and Roxanne Best Isham's (collectively, "Isham Plaintiffs") filed a Complaint for Personal Injury Damages and Loss of Consortium, which they amended on June 1, 2007, to add additional claims.  Isham Plaintiffs alleged causes of action for strict liability, breach of warranty, breach of express and implied warranties, fraudulent concealment/ failure to warn, unfair and deceptive trade practices, negligence, gross negligence and willful wanton indifference, emotional distress and loss of consortium.  On July 14, 2006, Dennis Claypool, Sheryll Claypool, Scott Claypool, and Kristin Claypool's (collectively, "Claypool Plaintiffs") filed a Complaint for Personal Injury Damages and Loss of Consortium.  Those complaints primarily were based on allegations of products liability.  On December 15, 2006, Isham Plaintiffs (CV No. 06-382) and Claypool Plaintiffs' (CV No.  06-286) cases were consolidated.

On August 23, 2007, the Court filed its Order Granting in Part and Denying Part Defendants' Motion to Dismiss.  This Court granted judgment on the pleadings in favor of Defendants on the following claims:  strict liability claims; Claypool Plaintiffs' negligent manufacture and Isham Plaintiffs' negligence

10

claims; Isham Plaintiffs' negligent misrepresentation claim; Claypool and Isham

Plaintiffs' breach of warranty claims, including Isham Plaintiffs' breach of express

and implied warranties; Isham and Claypool Plaintiffs' emotional distress claims,

and Isham Plaintiffs' unfair and deceptive trade practices claim.  This Court denied

judgment on the pleadings on Claypool and Isham Plaintiffs' fraudulent

concealment claims, Claypool and Isham Plaintiffs' gross negligence and willful

and wanton indifference punitive damages claims, and Plaintiffs Sheryll Claypool

and Roxanne Isham's loss of consortium claims.

On September 7, 2007, Isham Plaintiffs and Claypool Plaintiffs

(collectively "Plaintiffs") filed motions for reconsideration.  On October 5, 2007,

this Court granted Isham Plaintiffs' motion for reconsideration on their negligent

misrepresentation claim, permitting them to proceed with that claim because it was

not barred by maritime law's applicable three-year statute of limitations, but not to

proceed on the other claims previously dismissed.  This Court also granted

Claypool Plaintiffs' motion for reconsideration to permit amendment of their

Complaint before the deadline of October 19, 2007, to allege causes of action for

general maritime negligence and negligent misrepresentation.

On October 9, 2007, Claypool Plaintiffs filed a First Amended

Complaint.  Claypool Plaintiffs allege general negligence, negligent

11

misrepresentation, gross negligence and willful and wanton indifference, fraudulent concealment, emotional distress, and loss of consortium.

On December 10, 2007, Defendants filed a Motion for Partial Summary Judgment on Claypool Plaintiffs' First Amended Complaint.  (Doc. # 148.)  Defendants argue that Claypool Plaintiffs' negligent misrepresentation claim is barred by the statute of limitations, and even if it is not barred, Claypool Plaintiffs cannot prove the elements of a negligent misrepresentation claim or a fraudulent concealment claim.  Claypool Plaintiffs filed their opposition on January 24, 2008, and Defendants filed their reply on January 31, 2008.[1]

---

[1]Defendants argue that evidence submitted by Claypool Plaintiffs is not properly before this Court because the exhibits were submitted pursuant to a declaration of the attorney and the attorney has no personal knowledge of the documents at issue.  Rule 56(e) of the Federal Rules of Civil Procedure provides that "affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Many of the exhibits relied upon by this Court for purposes of deciding the instant motion were properly authenticated through deposition testimony of persons with personal knowledge.  For example, Exhibit 4 was authenticated by Drew Richardson on pages 275-76 of his deposition, which was attached as Exhibit 1.  In addition, Exhibits 9, 10, and 12 were partially authenticated by Richardson at pages 183-84, and 195 of his deposition transcript, Exhibit 11 was authenticated on page 190, and Exhibits 14, 15, and 16 were authenticated at page 201.  It appears that the remaining exhibits may have been properly authenticated through other deposition testimony.  This Court hereby orders Claypool Plaintiffs to submit the pertinent pages of deposition testimony to establish that each exhibit they filed with this Court has been properly authenticated.

On December 10, 2007, Defendants filed a Motion for Summary

Judgment on Isham Plaintiffs' First Amended Complaint.  (Doc. # 150.)

Defendants seek dismissal of Isham Plaintiffs' fraudulent concealment, negligent

misrepresentation, gross negligence and willful and wanton indifference, and loss

of consortium claims.  Isham Plaintiffs filed their opposition on January 24, 2008,

and Defendants filed a reply on January 31, 2008.[2]

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th

Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

---

[2]In their reply brief, Defendants point out that Isham Plaintiffs failed to file a
Concise Statement of Facts.  This Court, however, later granted Isham Plaintiffs'
motion to file a concise statement facts and the statement was filed.

13

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.      Fraudulent Concealment Claims

Defendants argue that all fraudulent concealment claims should be

dismissed because Defendants did not affirmatively mislead the Plaintiffs, and

none of the Plaintiffs were diligent in trying to uncover information regarding the Discover Scuba Experience.

Defendants rely on <u>Thorman v. Am. Seafoods Co.</u>, 421 F.3d 1090, 1094 (9th Cir. 2005), <u>Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.</u>, 858 F.2d 499, 502 (9th Cir. 1988), and <u>In re Ford Motor Co. Bronco II Prod. Liability Litigation</u> 982 F. Supp. 388 (E.D. La. 1997) for their argument that due diligence by the plaintiff is an element of a fraudulent concealment claim under admiralty law. This argument is misplaced. These cases dealt with fraudulent concealment as a tool to toll the statute of limitations, rather than as a separate cause of action that by itself may entitle a plaintiff to relief. <u>See</u> <u>Conmar Corp.</u>, 858 F.2d at 502, 504, 505 (noting that the action was filed outside of the statute of limitations period, but that fraudulent concealment could possibly toll the limitations period if the plaintiff could prove that he was affirmatively misled and was diligent in trying to uncover specific information); <u>see</u> <u>also</u> <u>Thorman</u>, 421 F.3d at 1094 n.3, 1096 (noting that fraudulent concealment and equitable estoppel are overlapping doctrines which come into play if the defendant takes active steps to prevent the plaintiff from filing a timely lawsuit); <u>In re Ford Motor Co.</u>, 982 F. Supp. at 394 (parties argued that their claims were not time-barred under Louisiana law due to fraudulent concealment by the defendants). This Court's research did not reveal any cases

within Ninth Circuit discussing fraudulent concealment under admiralty law as a separate cause of action.  Instead, this Court's research revealed, as in the cases cited above, that fraudulent concealment is not a stand-alone cause of action, but instead is a defense or exception to the running of the statute of limitations.  <u>See</u> 51 Am. Jur. 2d *Limitation* § 183 (2008) (discussing fraudulent concealment as an exception to the operation of statute of limitations); <u>See</u> <u>Temple v. Adams</u>, No. CV-F-04-6716, 2006 WL 2454275, at *8 (E.D. Cal. Aug. 23, 2006) (noting that the equitable doctrine of fraudulent concealment "is read into every federal statute of limitation[,]" and that "[e]quitable estoppel focuses on the defendant's wrongful actions preventing the plaintiff from asserting his claim.") (citations and internal quotation marks omitted).

Certainly, where a plaintiff has filed a lawsuit outside of the statute of limitations period, the plaintiff's due diligence in trying to discover the facts that were allegedly concealed is a hurdle that the plaintiff must overcome to maintain an otherwise untimely claim.  Tolling a statute of limitations, however, is not at issue in the instant motions.  Accordingly, the cases relied upon by Defendants are not instructive.

Neither the Isham Plaintiffs nor the Claypool Plaintiffs discuss elements of a cause of action for fraudulent concealment or otherwise discuss

17

whether one exists under either admiralty or state law separate from a tool to toll the statute of limitations or separate from their other causes of action.  Instead, both sets of Plaintiffs cite cases regarding the elements for a claim for fraud in general under Hawaii law, and discuss that due diligence is not a requirement.  <u>See</u> <u>UCSF-Stanford Health Care v. Haw. Mgmt. Alliance Benefits & Servs., Inc.</u>, 58 F. Supp. 2d 1162, 1168 (D. Haw. 1999) (noting that under Hawaii law, the elements for a claim of fraud are: "1) false representations made by the defendant; 2) with knowledge of their falsity (or without sufficient knowledge to determine whether they were true of false); 3) in contemplation of plaintiff's reliance upon them; and 4) plaintiff's detrimental reliance."); <u>see</u> <u>also</u> <u>Shaw v. Brown & Williamson Tobacco Corp.</u>, 973 F. Supp. 539, 551 (D. Md. 1997) (citing Maryland law); <u>Larsen v. Pacesetter Sys., Inc.</u>, 837 P.2d 1273, 1288 (Haw. 1992) ("[t]he elements of fraud include: 1) false representations made by the defendant; 2) with knowledge of their falsity (or without knowledge of their truth or falsity); 3) in contemplation of plaintiff's reliance upon them; and 4) plaintiff's detrimental reliance.")

This is certainly sufficient to place Defendants on notice that although their cause of action was entitled fraudulent concealment, that title was an attempt to specify the type of fraud at issue, e.g. fraud through omission of material facts,

and not to bring a claim for fraudulent concealment as basis for tolling a statute of limitations.  Indeed, in its previous order, this Court stated that "Plaintiffs' claims boil down to an allegation that Defendants deliberately concealed and/or withheld known information concerning safety hazards related to the Diving Program to bolster corporate profits at the expense of human life, while at the same time encouraging use of the program to induce participants."  (See Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss Claypool Pls.' Compl. or, in the Alternative, J. on the Pleadings; Granting in Part and Den. in Part Defs.' Mot. to Dismiss Isham Pls.' First Am. Compl. or, in the Alternative, J. on the Pleadings; and Den. Claypool Pls.' Req. to Amend Their Compl. ("Previous Order") at 44.)

Furthermore, upon a review of the First Amended Complaints, it appears that both sets of Plaintiffs may have alleged facts sufficient to support a claim for fraud in general pursuant to Federal Rule of Civil Procedure 9(b).[3] Despite this clarification by Plaintiffs, Defendants do not address the elements for a claim of fraud in general in their reply brief, and instead focus solely on the elements for fraudulent concealment that must be proved to toll the statute of limitations.  Therefore, because Defendants have not made a proper motion for

---

[3]This Court is not making a finding that the claims for fraud have been sufficiently pled.  Defendants may make that argument in a future dispositive motion, if warranted.

summary judgment addressing the correct elements for the Plaintiffs' claims based on fraud, their motions are denied.  However, because this Court's Previous Order, which addressed the elements of a claim for fraudulent concealment in a statute of limitations context and set out the elements of such claim, may have caused confusion as to the actual underlying cause of action being asserted by the Plaintiffs in this case, and because the dispositive motions deadline has not passed, this Court denies Defendants' motion for summary judgment on the fraudulent concealment claim without prejudice.  (See Previous Order at 39.)  Defendants may file another summary judgment motion or a motion for judgment on the pleadings on the fraud claims on or before the dispositive motions deadline, which addresses the elements for a claim of fraud by omitting allegedly material facts, if Defendants believe that such a motion is warranted.  Defendants and Plaintiffs should address whether the claim of fraud is brought under maritime or state law, or whether there is no difference under either law.

II.    Gross Negligence and Willful and Wanton Indifference and Loss of
        Consortium Claims

            Defendants also argue that Claypool and Isham Plaintiffs cannot sustain their gross negligence and willful and wanton indifference claims, or their loss of consortium claims because those claims are not separate causes of action,

but instead are either a claim for punitive damages or are derivative of their other claims.  Neither set of Plaintiffs addressed these arguments.

"Punitive damages . . . do not constitute a separate cause of action, but instead form a remedy available for some tortious or otherwise unlawful acts." S. Port Marine, LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58, 64 (1st Cir. 2000). Likewise, under Hawaii law, a claim for punitive damages "is not an independent tort, but is purely incidental to a separate cause of action." Ross v. Stouffer Hotel Co. (Haw.) Ltd., 879 P.2d 1037, 1049 (Haw. 1994).

Accordingly, as Plaintiffs do not address this argument and it appears that their gross negligence/willful and wanton indifference cause of action is a cause of action for punitive damages, this Court hereby dismisses such claims. Plaintiffs may, however, continue to pursue punitive damages as a remedy unless it is dismissed at a later date.

Defendants also assert that the loss of consortium claims must be dismissed because they are derivative of the negligence and fraud claims. Although such claims are derivative in the sense that they are dependent upon resolution of other claims, Defendants have not cited law to this Court that such claims may not exist as a separate cause of action as long as the underlying claims are still pending.  The one case cited by Defendants in support of their argument in

21

turn relied upon <u>Leipart v. Guardian Indus., Inc.</u>, 234 F.3d 1063, 1071 (9th Cir. 2000), which held that claims for loss of consortium are derivative of other claims, and because the other "state common-law claims survive[d] federal pre-emption, these derivative claims also survive." This indicates that as long as the underlying claims are still pending, the loss of consortium claim can be asserted as a separate cause of action. Indeed, under Hawaii law, such derivative loss of consortium claims "are considered separate, procedurally, from the underlying claim." <u>See Kahale v. City and County of Honolulu</u>, 90 P.3d 233, 247 (Haw. 2004) (citing <u>Yamamoto v. Premier Ins. Co.</u>, 668 P.2d 42, 48 (1983) (indicating that wife's derivative claim for damages is separate from her spouse's tort claim)).

As Claypool Plaintiffs and Isham Plaintiffs' fraud and negligence claims are still pending, their loss of consortium claims are viable as a separate cause of action. For these reasons, Defendants' motions for summary judgment on the loss of consortium claims are denied.

III.   <u>Negligent Misrepresentation Claims</u>

Defendants assert that no claim of negligent misrepresentation can be maintained under the Restatement (Second) of Torts Section 552 because both sets of Plaintiffs seek to recover damages for physical injury, which Defendants contend is not recognized under Section 552.

Despite two previous orders by this Court that both sets of Plaintiffs' negligent misrepresentation claims could be pursued under Section 552 of the Restatement (Second) of Torts, both sets of Plaintiffs argue for the first time that their allegations in their First Amended Complaints fit within Section 311 of the Restatement (Second) of Torts, which allows for recovery of physical harm. Section 311 provides that

> [a] party who negligently provides false information to another may be liable "for physical harm caused by action taken by the other in reasonable reliance upon such information." Restatement (Second) Torts § 311(1). Such liability may arise where harm results either to the person  who receives the information or to "such third persons as the actor should expect to be put in peril by the action taken." Id.

Jurgens v. Poling Transp. Corp., 113 F. Supp. 2d 388, 397-98 (E.D.N.Y. 2000).

Defendants argue that Plaintiffs' claims cannot arise under Section 311 because that section has not been adopted by federal courts sitting in admiralty.  This Court disagrees.  The Jurgens Court was a court sitting in admiralty and it cited Section 311 in setting out elements of a claim for negligent misrepresentation. 113 F. Supp. 2d at 397-98.  Furthermore, another court has held that general maritime law recognizes a claim for negligent misrepresentation. Somarelf v. Am. Bureau of Shipping, 704 F. Supp. 59, 63-64 (D.N.J. 1988) (the

23

court could "find no persuasive authority or maritime law principles suggesting that a negligent misrepresentation cause of action should not be recognized under maritime law."). Moreover, it is well established that where maritime law is silent on a particular issue, "state law or general common-law principles may inform the general maritime law . . . provided that state law does not conflict with Congressional maritime policy." Ellenwood v. Exxon Shipping Co., 795 F. Supp. 31, 32 (D. Me. 1992) (citing Conner v. Aerovox, Inc., 730 F.2d 835, 842 (1st Cir. 1984), cert. denied, 470 U.S. 1050 (1985)) (other citations omitted); see also Jurgens, 113 F. Supp. 2d at 396 ("[f]ederal maritime law incorporates common-law negligence principles[.]"). Finally, as noted by Isham Plaintiffs, many courts sitting in admiralty have adopted other sections of the Restatement of Torts. (See Isham Pls.' Opp'n at 23-24 n.10.); see also Pino v. Protection Maritime Ins. Co., Ltd., 599 F.2d 10, 14 (1st Cir. 1979) (applying § 766 of the Restatement (Second) of Torts as a "recognized national standard from which to fashion a controlling principle of substantive federal maritime law").

Defendants attempt to differentiate the Jurgens case by stating that the court was applying New York law and if this Court were to apply Hawaii law, Hawaii law has adopted Section 552 as the standard in negligent misrepresentation cases, and therefore, Plaintiffs cannot maintain an action under Section 311 of the

Restatement (Second) of Torts.  See State by Bronster v. United States Steel Corp., 919 P.2d 294 (Haw. 1996) (following the Restatement (Second) of Torts § 552 on negligent misrepresentation claims in Hawaii).  Although Hawaii has adopted Section 552, Section 552 and Section 311 are not mutually exclusive.  Instead they are complimentary provisions setting forth elements of negligent misrepresentation claims under different circumstances.  As cited by a Hawaii court, Section 552 represents "a more restricted rule of liability for negligent misrepresentation which results in solely pecuniary loss."  Kohala Agriculture v. Deloitte & Touche, 949 P.2d 141, 160 (Haw. App. 1997) (quoting the Restatement (Second) of Torts § 552 cmt. a) (emphasis added).  Section 311, on the other hand, compensates persons for physical injury and is not limited to information given in a business or professional capacity.  See Restatement (Second) Torts § 311 cmt. b.  Thus, the adoption of Section 552 does not mean that Section 311 cannot apply as well or instead of Section 552 in the right situation.  Indeed, in the Hawaii cases cited by Defendants, there was no discussion whether one provision should be adopted instead of the other.

This Court sees no reason why under maritime law, a plaintiff, who is not suing a classification society, cannot maintain a claim for negligent misrepresentation under Section 311 of Restatement (Second) of Torts, merely

25

because Section 552 has been adopted for other factual scenarios, or for any other reason.  Likewise, although Hawaii courts have adopted Section 552, this has not prevented Hawaii courts from recognizing a common-law claim for negligent misrepresentation that has elements different from the Restatement (Second) of Torts Section 552 requirements, but similar to Section 311.  Specifically, the Hawaii Supreme Court recently reiterated that "[n]egligent misrepresentation requires that: (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation."  Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 167 P.3d 225, 256 (Haw. 2007); see also Birmingham v. Fodor's Travel Publ'ns, Inc., 833 P.2d 70, 75 n.4 (Haw. 1992) (citing Section 311 verbatim in dicta).  The Restatement (Second) of Torts Section 311 similarly provides that

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
> > (a) to the other, or
> > (b) to such third persons as the actor should expect to be put in peril by the action taken.
> (2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information,
        or
(b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311.

That said, the question is whether these Plaintiffs in this case can maintain a cause of action for negligent misrepresentation under Section 311 of the Restatement of Torts and/or under Hawaii common-law at this stage in the litigation.[4]

Defendants argue that this Court's previous orders, which focused on Section 552 of the Restatement (Second) of Torts, are law of the case that limit Plaintiffs to bringing negligent misrepresentation claims under Section 552. Defendants are incorrect.  First, this Court's previous orders addressed Plaintiffs' claims based on product liability.  In that context, this Court cited various cases discussing Section 552.  Two of the cases cited briefly by this Court, <u>Otto Candies,</u>

---

[4]Isham Plaintiffs also cite to Sections 529 and/or 551 of the Restatement (Second) of Torts.  For the same reasons discussed above, Isham Plaintiffs may rely on Sections 529 and/or 551 of the Restatement of Torts as there is no reason that such sections would not be recognized in admiralty law.  Indeed, Defendants do not even argue that these sections have not been recognized in admiralty law.  This Court, however, is not hereby holding that Plaintiffs have properly pled allegations that would meet such sections or that they would be entitled to recover for physical injuries under such sections.  This Court is only holding that a court sitting in admiralty would not be prohibited from considering a claim brought under those sections.

L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 534-35 (5th Cir. 2003) and In
the Matter of the Compl. of Eternity Shipping, Ltd., 444 F. Supp. 2d 347, 360 (D.
Md. 2006), which noted that the few cases that have recognized a negligent
misrepresentation claim in maritime cases under the Restatement (Second) of Torts
§ 552 have done so "cautiously," were based upon lawsuits brought against a
classification society, which is a society that classifies sea-going vessels.  None of
the defendants in this case are a classification society, and thus those cases are not
instructive.

Second, and most importantly, nowhere in the previous orders of this
case did this Court limit Plaintiffs' negligent misrepresentation claims to claims
under Section 552 of the Restatement (Second) of Torts.  Accordingly, there is no
law of the case that Plaintiffs' negligent misrepresentation claims can be pursued
only under Section 552 of the Restatement (Second) of Torts, and cannot be
maintained pursuant to Section 311 of the Restatement (Second) of Torts or some
other section, or under Hawaii common law.  See United States v. Thrasher, 483
F.3d 977, 981 (9th Cir. 2007) (under the law of the case doctrine, a court is
generally precluded from reconsidering an issue previously decided by the same
court . . . .  For the doctrine to apply, the issue in question must have been decided

explicitly or by necessary implication in the previous disposition.").  Therefore,

Defendants' argument fails.

Defendants next argue that Plaintiffs are changing their theory of

liability and cannot be allowed to do so at the summary judgment stage.  This

argument is also incorrect.  Making a claim pursuant to Section 311 of the

Restatement (Second) of Torts, rather than Section 552, or making a claim under

Hawaii common-law, does not a change of the theory of liability.  Plaintiffs have

always maintained that Defendants made a negligent misrepresentation through

omission of material facts and by claiming that the Discover Scuba Experience was

safe and suitable for novice divers.  Thus, Plaintiffs have not alleged a new theory

of liability.

Defendants also argue that even if Plaintiffs are allowed to pursue a

claim under Section 311 of the Restatement (Second) of Torts, their claims fail

because their First Amended Complaints do not contain allegations that Plaintiffs

were provided with false information or that false representations were made.  This

Court disagrees.  Although the Hawaii Supreme Court did not explicitly hold that a

negligent misrepresentation claim could be maintained based upon the omission of

material facts, the court discussed such a claim in the context of a failure to

disclose allegedly material information.  See Ass'n of Apartment Owners of

Newtown Meadows, 167 P.3d at 256 (discussing a negligent misrepresentation claim based upon a failure to disclose information).  Likewise, Section 311 of the Restatement (Second) of Torts requires only that false information be given, not that a false statement be made.  One of illustrations to Section 311 states that a person could be found liable where they make an incomplete disclosure thereby giving a false impression.  Restatement (Second) of Torts § 311 cmt. a ("A has charge of B, a lunatic of violent tendencies. A advertises for a servant, and C applies for the employment. A informs C that B is insane, but negligently gives C the impression that B is not violent or dangerous. C accepts the employment, and is attacked and injured by B. A is subject to liability to C.").

Here, both sets of Plaintiffs have presented enough facts to create a genuine issue of fact as to whether they were provided with information that the Discover Scuba Experience was safe and suitable in all respects for novice divers and whether that information was false in light of the survey results from PADI members, warning letters from PADI members, and the deaths of two persons participating in the Discover Scuba Experience.  Indeed, Plaintiffs have alleged that Defendants failed to inform Matthew Isham of the problems of providing direct supervision with a student-instructor ratio of four-to-one and failed to explain how to maintain direct supervision while taking a group through a lava

tube when some members do not want to swim through the tube.  Essentially, Isham Plaintiffs contend that Defendants failed to disclose to Isham all necessary information to decide whether or not it was safe to instruct inexperienced divers in open ocean waters through the Discover Scuba Experience.  Claypool Plaintiffs contend that Defendants should have known that the safety of the first-time diver participants depended upon the efficacy and accuracy of the information that Defendants published about the supervision standards for the Discover Scuba Experience, and that they relied upon this information when evaluating whether to participate in the Discover Scuba Experience.

Defendants also argue that Claypool Plaintiffs' negligent misrepresentation claim is barred by the statute of limitations and does not relate back to their original complaint.  Claypool Plaintiffs concede that their claim was filed outside of the statute of limitations period, but argue that their original complaint was timely filed and the negligent misrepresentation claim relates back to the original complaint.

Rule15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original

pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).  "[T]he test to be applied when the amended pleading seeks to allege a new or different claim or defense . . . [is] whether the amendment is transactionally related to the original pleading." Martell v. Trilogy Ltd., 872 F.2d 322, 324 (9th Cir. 1989).  The court must determine "whether the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." Id. at 325.  "Amendments seeking to add claims are to be granted more freely than amendments adding parties." Union Pac. R. Co. v. Nev. Power Co.  950 F.2d 1429, 1432 (9th Cir. 1991).

In Martell, the Ninth Circuit determined that Rule 15(c) does not require notice to a named defendant of the theory of recovery, but instead requires only that the new cause of action arises out of the conduct set forth in the original complaint, such that the defendant has notice of the conduct.  872 F.2d at 326 (rejecting the argument that although the facts in both complaints were essentially the same, the amended complaint should not relate back because the plaintiff was claiming a different theory of recovery and holding that "Rule 15(c) does not require this sort of notice").

Here, as in <u>Martell</u>, all that the Claypool Plaintiffs are changing is their theory of recovery.  There is no question that the Claypool Plaintiffs' original and amended pleadings share a common core of operative facts.  Both complaints allege the same operative facts:  that Claypool Plaintiffs were novice divers and Dennis Claypool was injured while participating in the Discover Scuba Experience.  Both complaints allege that Dennis Claypool relied on the Discover Scuba Experience to introduce him to scuba diving in a safe and closely supervised environment.  In addition, the original complaint alleged that Defendants carelessly described, recommended, merchandised, advertised, promoted, administered, interpreted, updated, and sold the Discover Scuba Experience knowing that it was unsafe for the purpose which it was intended, and that the defective and dangerous character of the Discover Scuba Experience was not made known to Plaintiffs.  The original complaint also alleged that Defendants failed to disclose the defects of the Discover Scuba Experience and failed to provide a warning of the dangers of becoming separated from the dive instructor to any of the novice diving participants.  All that the Claypool Plaintiffs have done is change their products liability claims to a claim for negligent misrepresentation.  Accordingly, as the

First Amended Complaint shares a common core of operative facts with the original complaint, Defendants had fair notice of conduct at issue.  Therefore, Claypool Plaintiffs' First Amended Complaint relates back to the original complaint and their negligent misrepresentation claim was timely filed.

Therefore, Defendants' motions for summary judgment on the negligent misrepresentation claims are denied.


CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE both of Defendants' Motions. Defendants' motions are GRANTED with respect to both sets Plaintiffs' claims for gross negligence/willful and wanton indifference.  Plaintiffs may, however, continue to pursue punitive damages as a remedy, but not as a separate cause of action.  Defendants' motions are DENIED without prejudice with respect to both Plaintiffs' claims for fraudulent concealment because that is a claim for fraud by omission of facts.  Defendants' motions are DENIED with respect to the Plaintiffs'

loss of consortium claims.  Defendants' motions on the negligent misrepresentation

claims are DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 2, 2008.

_____
David Alan Ezra
United States District Judge

Matthew Isham, et al. v. PADI Worldwide Corp., et al., CV No. 06-00382 DAE-BMK, Dennis Claypool, et al. vs. PADI Worldwide Corp., et al., CV No. 06-00386 DAE-BMK; ORDER GRANTING IN PART DENYING IN PART WITHOUT PREJUDICE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PLAINTIFFS DENNIS CLAYPOOL, SHERYL CLAYPOOL, SCOTT CLAYPOOL, AND KRISTEN CLAYPOOL'S FIRST AMENDED COMPLAINT AND GRANTING IN PART DENYING IN PART WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFFS MATTHEW ISHAM AND ROXANNE BEST ISHAM'S FIRST AMENDED COMPLAINT